**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

THE FORTUNE SOCIETY, INC.,

        Plaintiff,

        v.

iAFFORD NY, LLC,

        Defendant.

Civil Action No. 1:22-cv-06584-PKC-SJB

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
## ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

**NIXON PEABODY LLP**

Travis Hill
Erica F. Buckley
Tower 46, 55 West 46th Street
New York, NY 10036-4120
Telephone: 212-940-3131
thill@nixonpeabody.com
ebuckley@nixonpeabody.com

*Attorneys for Defendant iAFFORD NY, LLC*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND .................................................................................................. 4

IAFFORD NY AND THE ALLEGED CONDUCT AT ISSUE IN THIS ACTION ..................... 4

PLAINTIFF AND ITS ALLEGATIONS ................................................................................. 6

APPLICABLE LEGAL STANDARDS .................................................................................... 9

    I.    Standing ................................................................................................................... 9

    II.   Failure to State a Claim ......................................................................................... 10

ARGUMENT ........................................................................................................................ 10

PLAINTIFF FAILS TO ALLEGE A SUFFICIENT INJURY TO ESTABLISH ARTICLE
III STANDING ..................................................................................................................... 10

PLAINTIFF FAILS TO STATE A CLAIM UNDER THE FAIR HOUSING ACT .................. 14

    I.    Plaintiff Fails to Plead an Actionable Disparate-Treatment Claim ......................... 15

    II.   Plaintiff Fails to Plead an Actionable Disparate-Impact Claim .............................. 17

         1.    Plaintiff Fails to Allege a Disproportionate Impact on African American
              and Latinx Applicants ................................................................................. 18

         2.    Plaintiff Fails to Allege a Robust Causal Link Between the Challenged
              Policy and the Alleged Discriminatory Effect .............................................. 20

    III.  Plaintiff Fails to Plead Actionable Claims under FHA Section 3604(c) ................. 22

PLAINTIFF'S STATE- AND LOCAL-LAW CLAIMS SHOULD BE DISMISSED ............... 23

    I.    Plaintiff Fails to State a Claim Under State and Local Law ................................... 23

    II.   Alternatively, this Court May Decline to Exercise Supplemental Jurisdiction ....... 24

CONCLUSION...................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...................................................................................10, 15, 17

*Bank of America Corp. v. City of Miami,*
    137 S.Ct. 1296 (2017)...........................................................................................11

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)..............................................................................................16

*Betsey v. Turtle Creek Associates,*
    736 F.2d 983 (4th Cir. 1984) ...............................................................................19

*Boykin v. KeyCorp,*
    521 F.3d 202 (2d Cir. 2008).........................................................................2, 15, 17

*Short v. Manhattan Apartment, Inc.,*
    916 F.Supp.2d 375 (S.D.N.Y. 2012).................................................................23, 24

*Carnegie-Mellon Univ. v. Cohill,*
    484 U.S. 353 (1988)..............................................................................................24

*Erickson v. Pardus,*
    551 U.S. 89 (2007)................................................................................................15

*Fair Hous. Justice Ctr., Inc. v. 203 Jay St. Associates, LLC,*
    No. 21CV1192NGGJRC, 2022 WL 3100557 (E.D.N.Y. Aug. 4, 2022)...............11, 12, 13, 14

*Fortune Society v. Sandcastle Towers Hous. Dev. Fund,*
    388 F. Supp. 3d 145 (E.D.N.Y. 2019) ........................................................9, 13, 24

*Francis v. Kings Park Manor, Inc.,*
    992 F.3d 67 (2d Cir. 2021)............................................................................10, 16, 23

*Francois v. New York City Dept. of Ed.,*
    No. 19-CV-11119 (ER), 2021 WL 603226 (S.D.N.Y. Feb. 16, 2021)....................24

*Harris v. Dep't of Hous. Pres. & Dev.,*
    No. 08-CV-1886 (ENV), 2011 WL 13299800 (E.D.N.Y. Apr. 5, 2011) ...............16

*Havens Realty Corp. v. Coleman,*
    455 U.S. 363 (1982)..........................................................................................11, 13

*Huntington Branch, N.A.A.C.P. v. Town of Huntington*,
844 F.2d 926 (2d Cir. 1988), *aff'd in part sub nom. Town of Huntington, N.Y.
v. Huntington Branch, N.A.A.C.P.*, 488 U.S. 15 (1988) ..........................................18

*Irish Lesbian & Gay Org. v. Giuliani*,
143 F.3d 638 (2d Cir. 1998)........................................................................................2, 11

*Keiler v. Harlequin Enters. Ltd.*,
751 F.3d 64 (2d Cir. 2014)................................................................................................10

*Kolari v. New York-Presbyterian Hosp.*,
455 F.3d 118 (2d Cir. 2006).............................................................................................24

*L.C. v. LeFrak Org., Inc.*,
987 F. Supp. 2d 391 (S.D.N.Y. 2013)..............................................................................19

*Langan v. Johnson & Johnson Consumer Cos.*,
897 F.3d 88 (2d Cir. 2018)............................................................................................9, 10

*Logan v. Matveevskii*,
175 F. Supp. 3d 209 (S.D.N.Y. 2016).........................................................................15, 17

*Louis v. N.Y.C. Hous. Auth.*,
152 F. Supp. 3d 143 (S.D.N.Y. 2016)..............................................................................10

*Lujan v. Defenders of Wildlife*,
540 U.S. 555 (1992)...........................................................................................................11

*LuxuryBeachfrontGetaway.com, Inc. v. Town of Riverhead, New York*,
No. 17-CV-4783(SJF)(SIL), 2018 WL 4635736 (E.D.N.Y. June 25, 2018)..........................24

*Mandala v. NTT Data, Inc.*,
975 F.3d 202 (2d Cir. 2020).........................................................................................19, 20

*Mass. Fair Hous. Ctr. v. HUD*,
496 F. Supp. 3d 600 (D. Mass. 2020) ..............................................................................17

*Mhany Mgmt., Inc. v. Cnty. of Nassau*,
819 F.3d 581 (2d Cir. 2016).......................................................................................14, 15, 18

*N.Y.C.L.U. v. N.Y. City Transit Auth.*,
652 F.3d 247 (2d Cir. 2011)..............................................................................................11

*Nieblas-Love v. N.Y.C. Hous. Auth.*,
165 F. Supp. 3d 51 (S.D.N.Y. 2016).................................................................................23

*Nnebe v. Daus*,
644 F.3d 147 (2d Cir. 2011)..............................................................................................11

4872-9118-3934

*Ragin v. Harry Macklowe Real Estate Co.*,
  6 F.3d 898 (2d Cir. 1993) ........................................................................11, 22

*Ragin v. New York Times Co.*,
  923 F.2d 995 (2d Cir. 1991) ................................................................................22

*Sanders v. Grenadier Realty, Inc.*,
  No. 09-2341-cv, 2009 WL 1270226 (S.D.N.Y. May 6, 2009) ................................24

*Soloviev v. Goldstein*,
  104 F. Supp. 3d 232 (E.D.N.Y. 2015) ..................................................................23

*Sonterra Capital Master Fund Ltd. v. UBS AG*,
  954 F.3d 529 (2d Cir. 2020) ..................................................................................9

*Soules v. U.S. Dept. of Hous. Urban Dev.*,
  967 F.2d 817 (2d Cir. 1992) ................................................................................22

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ...............................................................................10, 11

*Suarez v. American Stevedoring, Inc.*,
  No. 06-CV-6721, 2009 WL 3762686 (E.D.N.Y. Nov. 10, 2009) .........................23

*Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*,
  576 U.S. 519 (2015) ........................................................................... *passim*

*Thompson v. ABVI Goodwill Servs.*,
  531 F. App'x 160 (2d Cir. 2013) ..........................................................................10

*Tsombanidis v. W. Haven Fire Dep't*,
  352 F.3d 565 (2d Cir. 2003) ...........................................................3, 18, 19, 20

*Wards Cove Packing Co., Inc. v. Antonio*,
  490 U.S. 642 (1989) .............................................................................................19

*Warth v. Seldin*,
  422 U.S. 490 (1975) ...........................................................................9, 10, 11, 14

*Wilson v. N.Y.P. Holdings, Inc.*,
  No. 05 Civ. 10355(LTS)(DFE), 2009 WL 873206 (S.D.N.Y. Mar. 31, 2009) ......24

**Statutes**

28 U.S.C. § 1367 (c)(3) .............................................................................................24

42 U.S.C. § 3604 .........................................................................................................2

42 U.S.C. § 3604(a), (b), and (c) ..............................................................................14

iv

Fair Housing Act ("FHA")................................................................................ *passim*

FHA Section 3604(c) ...................................................................3, 15, 22, 23

FRCP Sections 12(b)(1) and 12(b)(6)..............................................................2

NYCHRL, N.Y.C. Admin. Code § 8-107(5) ...................................8, 23, 24

NYSHRL, New York Executive Law § 296(5).................................8, 23

**Other Authorities**

24 C.F.R. § 100.500(c)(1) (2013) ..............................................................17, 18

U.S. Dep't of Hous. & Urb. Dev., *Office of General Counsel Guidance on Application of Fair Housing Act Standards to the Use of Criminal Records,* 7 (Apr. 4, 2016), https://www.hud.gov/sites/documents/HUD_OGCGUIDAPPFHASTANDCR.PDF .................................................................................................................7

## PRELIMINARY STATEMENT

iAfford NY, LLC ("iAfford NY" or "Defendant") is an affordable housing marketing agency that quickly and efficiently places low-income tenants in affordable apartments across New York City in accordance with a highly prescribed marketing plan. Over 50% of the population served by iAfford NY consists of African American and Latinx individuals and families. Defendant has successfully placed hundreds of minorities in affordable housing, including justice-involved individuals, directly combatting the housing crisis that plagues New York City. iAfford NY does not, and has not, discriminated against any applicant on the basis of race, color, or national origin. The Fortune Society's ("Plaintiff") claims to the contrary are completely baseless and inflammatory.

Plaintiff and iAfford NY should be partners in addressing the New York City affordable housing crisis. Instead, Plaintiff has chosen to file a case that never should have been brought. Plaintiff's allegation that Defendant uses a blanket criminal history ban to screen applicants is false. Plaintiff's claim that Defendant does so to discriminate against African American and Latinx persons is also false. Between 2020 and 2022, in accordance with a highly prescribed marketing plan, iAfford NY approved five out of eight of its justice-involved applicants, all of whom were minorities.

iAfford NY's marketing plan for justice-involved applicants is race neutral and fully complies with both Department of Housing and Urban Development ("HUD") and New York City Department of Housing Preservation and Development ("HPD") guidance. In fact, the policy for justice-involved applicants employed by Defendant was implemented with HPD's full approval. The "individualized consideration" Plaintiff calls for, Compl. ¶¶ 58-65, is the exact policy iAfford NY employs.

Simply put, there is no case and there is no controversy. Plaintiff lacks standing to bring this suit and fails to state any claim of race discrimination under the Fair Housing Act ("FHA"), or state or local anti-discrimination laws. This action should be dismissed with prejudice, pursuant to Federal Rules of Civil Procedure Sections 12(b)(1) and 12(b)(6). Alternatively, this Court should dismiss Plaintiff's federal claims with prejudice and decline to exercise supplemental jurisdiction over Plaintiff's state and local claims.

As an initial point, Plaintiff lacks standing. It is curious that Plaintiff's claims arise from alleged discrimination against an unnamed individual. Instead of asserting the individual's rights, Plaintiff seeks to proceed on its own behalf, as an organization. To that end, Plaintiff fails to plead any plausible facts to support the conclusion that it has suffered an injury directly related to Defendant's alleged discriminatory action. *See Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 639 (2d Cir. 1998) (organization must meet the same standing test applied to individuals by showing injury in fact, causation, and redressability). Thus, the case should be dismissed for lack of standing.

Substantively, Plaintiff's Complaint is also deficient. Plaintiff purports to assert claims alleging both disparate treatment and disparate impact under the FHA, 42 U.S.C. § 3604. However, the factual allegations raised by Plaintiff do not plausibly assert the disparate treatment of any racial group. A disparate treatment claim requires Plaintiff to allege that person(s) were treated differently from similarly situated persons because of race. *See Boykin v. KeyCorp*, 521 F.3d 202, 214-15 (2d Cir. 2008). Plaintiff makes no such allegation. Indeed, Plaintiff repeatedly admits throughout its complaint that it seeks to challenge a "[f]acially neutral housing practice[ ] that ha[s] a disparate impact on the basis of race . . . ." Compl. ¶43. Clearly, Plaintiff frames its

4872-9118-3934

allegations as a case of disparate impact, not disparate treatment, and provides no plausible support for the latter. As such, Plaintiff fails to state a claim for disparate treatment.

Plaintiff also fails to state a claim for disparate impact. Plaintiff fails to demonstrate a "disproportionate impact" on a protected group, as compared to similarly situated others, and fails to show a "causal connection between the facially neutral policy and the alleged discriminatory effect[.]" *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 575 (2d Cir. 2003), *superseded by regulation on other grounds*; *accord Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 542 (2015) (requiring "robust causality" between disproportionate impact and challenged conduct). Plaintiff references general statistics regarding African American and Latinx individuals and the criminal justice system to claim that Defendant's criminal history policy has a disparate impact. Compl. ¶¶ 44-57. However, Plaintiff fails to reference any specific statistics from the relevant population iAfford NY actually serves. Plaintiff fails to allege through its non-specific statistics that Defendant's policy has a disproportionate impact on African American and Latinx individuals. Thus, Plaintiff fails to state a claim for disparate impact.

Plaintiff, briefly, also raises a claim under Section 3604(c) of the FHA related to notices, statements, and advertising. However, Plaintiff's bare allegations are insufficient to support this claim. Additionally, Plaintiff's state- and local-law claims should be dismissed on the same grounds warranting dismissal of the FHA claims. Alternatively, the Court could properly decline to exercise supplemental jurisdiction over them, once Plaintiff's FHA claims are dismissed.

For the reasons discussed here, this Court should dismiss the Complaint in its entirety, with prejudice. Alternatively, this Court should dismiss Plaintiff's federal claims with prejudice and decline to exercise supplemental jurisdiction over Plaintiff's state and local claims.

# FACTUAL BACKGROUND[1]

## IAFFORD NY AND THE ALLEGED CONDUCT AT ISSUE IN THIS ACTION

iAfford NY is a New York State limited liability company and marketing agent approved by HPD to manage the application and selection process for City-assisted affordable housing units across New York City. Compl. ¶¶ 26, 28. As a marketing agent, iAfford NY is retained by developers who participate in the Affordable New York Housing Program ("ANY"), which grants developers a tax exemption in exchange for allocating 25–30% of the units as affordable housing for income eligible tenants based on the Area Median Income ("AMI"). *Id.* ¶¶ 27, 50. The affordable units are then rented to eligible applicants through the NYC Housing Connect lottery system. *Id.* In addition, iAfford NY rents affordable units through a referral system with Homeless Placement Services ("HPS"). Affidavit of Eugene Goldstein ¶ 4.

iAfford NY serves as an intermediary between eligible tenants and developers, streamlining the process from document collection and verification of applicants' eligibility, to the signing of leases. Compl. ¶ 29. Founded in 2018, iAfford NY commits itself to providing excellent and efficient services to both developers and applicants in filling affordable units. Affidavit of Eugene Goldstein ¶¶ 2, 5-6. iAfford NY has invested in new technologies and systems to reduce red tape and get applicants into affordable units at a faster rate, placing over 500 eligible tenants in affordable units since 2019. *Id.* ¶¶ 5, 9.

iAfford NY approaches its business with integrity and a commitment to excellence, even serving as an HPD Marketing Monitor to ensure developer compliance with HPD regulations. *Id.* ¶ 8; Compl. ¶¶ 32-33. iAfford NY's entire business model is based upon its knowledge of the

---

[1] Except as otherwise stated, the factual recitation set forth here is drawn from the allegations of Plaintiff's Complaint. Defendant does not concede the accuracy of any such allegations and hereby reserves all rights to contest, at the appropriate time, any factual matter pleaded in Plaintiff's Complaint.

4872-9118-3934

affordable housing space and its commitment to matching eligible applicants, regardless of race, with affordable units.

For each project iAfford NY is retained, and prior to commencement of services, it must develop a marketing plan outlining applicant eligibility and screening procedures for the building in accordance with HPD's highly-prescribed Marketing Handbook, which is then approved by HPD. Affidavit of Eugene Goldstein ¶¶ 10-11. iAfford NY, its employees and agents carry out all services in strict accordance with each building's marketing plan. *Id.* ¶ 12. Each approved marketing plan has specific eligibility criteria, including criteria for assessing justice-involved applicants. *Id.* ¶ 11. Out of the 95 buildings for which iAfford NY serves as a marketing agent, not one building has a marketing plan that categorically bans applicants with criminal histories. *Id.* In fact, since January 2020, iAfford NY has approved five of the eight justice-involved applicants. *Id.* ¶ 18. Overall, iAfford NY's clients are over 50% African American and Latinx. *Id.* ¶ 17. Of the approved justice-involved applicants, 80% were African American and 20% were Latinx. *Id.* ¶ 18.

In or around August 2021, iAfford NY received an email from HPD with the agency's updated Marketing Handbook, including new requirements related to the screening of justice-involved applicants. *Id.* ¶ 15. The Marketing Handbook provided that marketing agents must conduct a holistic and individualized review of each applicant with a criminal history based on a list of enumerated factors. Compl. ¶¶ 64-65. Additionally, marketing agents are limited to considering convictions for specific offenses that "involve physical danger or violence to persons or property or that adversely affect the health[,] safety[,] and welfare of other people." *Id.* Since its release, iAfford NY follows the August 2021 Marketing Handbook and the policy for assessing justice-involved applicants for all of its properties. Affidavit of Eugene Goldstein ¶ 15.

## PLAINTIFF AND ITS ALLEGATIONS

Plaintiff is a New York not-for-profit corporation that is "dedicated to assisting formerly incarcerated individuals and their families through advocacy and the provision of reentry services, including housing." Compl. ¶ 13. As Plaintiff only has capacity to provide 300 beds of temporary and permanent housing for its clients, Plaintiff assists clients in finding external permanent housing when no internal options are available. *Id.* ¶¶ 22-24. Plaintiff alleges that the lack of affordable housing options available to the formerly incarcerated in New York City "hampers" its pipeline, delaying the transition of its clients from temporary to permanent housing by over eight months. *Id.* ¶ 25.

Plaintiff alleges that in April 2021, while helping a client find permanent housing, "[i]n the course of its regular activities[,]" Plaintiff "became aware that iAfford discourages and/or categorically rejects applicants based on justice involvement." *Id.* ¶ 34. The client allegedly "met all the state requirements for the apartment" and "completed all necessary portions of the application[,]" yet was denied at the pre-screening stage "solely based on his criminal justice involvement." *Id.* ¶¶ 34-35. Without alleging a date or the timeline for the appeal process, Plaintiff claims that it assisted the client in contacting iAfford NY to inquire about appealing his denial, but did not receive a response. *Id.* ¶ 36.

Plaintiff's client applied to an affordable unit in a building located at 104 Linden Boulevard, Brooklyn, New York 11226, with an approved HPD marketing plan that required criminal background checks to be completed and specified disqualifying convictions, including non-violent felony convictions within seven years of the appointment date. Affidavit of Eugene Goldstein ¶ 13-14. The client had a prior felony conviction for burglary in the third degree from 2016. *Id.* ¶ 14. The client applied to the affordable unit prior to the release of the August 2021 HPD Marketing Handbook and the new requirements for criminal background checks. The

6

building's approved marketing plan, at that time, complied with HPD guidance. *See id.*, Ex. A.  In addition, the marketing plan was consistent with HUD guidance, as its criminal background check policy took into account "the nature, severity, and recency of criminal conduct." *See* U.S. Dep't of Hous. & Urb. Dev., *Office of General Counsel Guidance on Application of Fair Housing Act Standards to the Use of Criminal Records,* 7 (Apr. 4, 2016), https://www.hud.gov/sites/documents/HUD_OGCGUIDAPPFHASTANDCR.PDF.  The client's denial was made pursuant to the building's HPD-approved marketing plan and occurred in April 2021, prior to HPD's new guidance. Affidavit of Eugene Goldstein ¶¶13-15.

In August 2021, four months after the client's rejection, Plaintiff contacted Defendant to inquire about its policy on applicants with criminal histories. Compl. ¶ 38.  Plaintiff alleges that an iAfford NY Project Manager stated that "'usually people with criminal backgrounds are rejected, like overall.'" *Id.*  Plaintiff engaged the Fair Housing Justice Center ("FHJC") to "conduct two additional recorded tests." *Id.* ¶ 39.  In September 2021 and December 2021, FHJC testers called iAfford NY to inquire about its policy regarding criminal convictions. *Id.* ¶¶ 40, 41. Allegedly, an iAfford NY Project Manager informed the tester: "'if there is any criminal background on [an applicant's] credit report, then we are forced to reject the application'" regardless of the "type and length of time of the conviction[.]" *Id.* ¶ 40.  The Project Manager allegedly claimed that "'it's not iAfford's policy but it's HPD's[.]'" *Id.*  In the second call, an iAfford NY Applicant File Analyst allegedly stated, "'when they do a credit check if your criminal record shows up on your credit report, then that is going to make you ineligible to proceed.'" *Id.* ¶ 41.  Based on these three calls, Plaintiff alleges that "iAfford maintains a practice of categorically discouraging and/or rejecting applicants with a record of criminal conviction." *Id.* ¶ 6. And, because "Black and Latino individuals are far more likely than white individuals to have a criminal

record[,] . . . iAfford's blanket ban operates to disqualify otherwise-qualified Black and Latino individuals from living in its marketed properties at disproportionate rates." *Id.* ¶ 49.

To support its claim, Plaintiff cites national and New York State data on racial disparities in the criminal justice system. *Id.* ¶¶ 44-48. Plaintiff attempts to narrow the analysis to the "qualified applicant pool" of iAfford NY managed units, but merely presents a statistical analysis of national and New York State data by income group as represented by the AMI. *Id.* ¶¶ 49-56. Additionally, Plaintiff's statistics are limited to the male population. *Id.* ¶¶ 53-55.

Plaintiff does not cite data specific to New York City, to the affordable housing applicant pool, to iAfford NY's applicant pool, or to those approved and placed in affordable units by iAfford NY. *See id.* Plaintiff only cites to its client's denial as evidence that applicants have been denied placement in iAfford NY marketed properties. *Id.* ¶ 35. Plaintiff does not allege the race of its client. *See id.* ¶¶ 5, 34-36. Plaintiff does not cite to any other client who has been denied housing due to iAfford NY's alleged "blanket ban" on applicants with criminal histories. *Id.* ¶ 4.

Plaintiff asserts claims of unlawful racial discrimination by Defendant under the FHA, the New York State Human Rights Law, New York Executive Law § 296(5) ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(5) ("NYCHRL"). *Id*. ¶¶ 93-104.

Plaintiff claims that Defendant's alleged policy has "an adverse and disproportionate impact on Black and Latino individuals in New York City as compared to similarly situated white people. *Id.* ¶ 94. Despite admitting that Defendant's alleged policy is "facially neutral" with regard to race, *id.* ¶ 43, Plaintiff also alleges that Defendant's "acts, policies, and practices have been carried out with the intent to discriminate on the basis of race, color, and national origin," *id.* ¶¶ 95, 99, 103. Plaintiff claims that discriminatory intent can be inferred from the foreseeability of

the disparate impact itself, *id.* ¶ 71, that Defendant should have been aware of HUD policies, *id.* ¶ 72, and that Defendant had "direct and specific knowledge" of the discriminatory effect due to its knowledge of HPD policies, *id.* ¶¶ 73-74.

Plaintiff claims that Defendant's alleged discriminatory policy has "frustrated Fortune's mission of ensuring that formerly incarcerated people can successfully reenter society and obtain safe and stable housing, forced it to divert resources to address iAfford's discrimination, and diminished its ability to carry out other programs and initiatives." *Id.* ¶ 76. Specifically, Plaintiff claims it spent a "significant number of hours investigating iAfford's unlawful policies and practices[,]" *id.* ¶ 82, "expended time and financial resources in coordinating FHJC's investigation[,]" *id.* ¶ 83, invested "significant resources in training videos and other advocacy resources . . . [to] rebut the impression that such categorical bans are permissible[,]" *id.* ¶ 84, and provided "temporary housing and support to individuals who would otherwise be qualified for these affordable housing opportunities[,]" *id.* ¶ 86.

Plaintiff's Complaint prays for compensatory and punitive damages, as well as declaratory and injunctive relief. *Id.* at 30-31.

## APPLICABLE LEGAL STANDARDS

### I.  Standing

"The threshold question in every federal case . . . is 'whether the plaintiff has made out a case or controversy between himself and the defendant within the meaning of Article III.'" *Fortune Society v. Sandcastle Towers Hous. Dev. Fund*, 388 F. Supp. 3d 145, 161 (E.D.N.Y. 2019) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (internal quotation omitted)). "'To ensure that this bedrock case-or-controversy requirement is met, courts require that plaintiffs establish their standing as the proper parties to bring suit.'" *Sonterra Capital Master Fund Ltd. V. UBS AG*, 954 F.3d 529, 533-34 (2d Cir. 2020) (quoting *Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d

88, 92 (2d Cir. 2018) (citations omitted)).  To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  Failure to do so deprives the federal court of jurisdiction and the complaint must be dismissed. *See Warth*, 422 U.S. at 498-502.

## II.      Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  "[A] complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted).  However, "'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,' . . . are not entitled to the presumption of truth." *Thompson v. ABVI Goodwill Servs.*, 531 F. App'x 160, 161 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).  Where, as here, the Plaintiff's non-conclusory factual allegations fail to plausibly support a claim for entitlement to relief under the fair-housing laws, courts do not hesitate to dismiss complaints at the pleading stage. *See, e.g., Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 82 (2d Cir. 2021); *Louis v. N.Y.C. Hous. Auth.*, 152 F. Supp. 3d 143, 159 (S.D.N.Y. 2016).

## ARGUMENT

## PLAINTIFF FAILS TO ALLEGE A SUFFICIENT INJURY TO ESTABLISH ARTICLE III STANDING

To satisfy the case and controversy requirement under Article III of the Constitution, a plaintiff must have standing.  To establish standing, a plaintiff must show an "'injury in fact' that is 'fairly traceable' to the defendant's conduct and 'that is likely to be redressed by a favorable

judicial decision.'" *Bank of America Corp. v. City of Miami*, 137 S.Ct. 1296, 1302 (2017) (quoting *Spokeo*, 578 U.S. at 339). Here, Plaintiff fails to satisfy this threshold requirement.

An organization may assert standing either on behalf of its members ("associational standing") or on its own behalf ("organizational standing"). *See N.Y.C.L.U. v. N.Y. City Transit Auth.*, 652 F.3d 247, 255 (2d Cir. 2011); *Warth*, 422 U.S. at 511; *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378 (1982). Associational standing requires an organization to demonstrate that a particular member of the organization would have standing to bring the suit individually. *See id.* To assert standing on its own behalf, an organization must meet the same standing test applied to individuals by showing injury in fact, causation, and redressability. *See Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d at 639. Plaintiff's attempt to establish organizational standing falls short.

An injury in fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 540 U.S. 555, 560 (1992). An organization may meet this standard where a "concrete and demonstrable injury to an organization's activities" results in a "drain on the organization's resources." *Havens*, 455 U.S. at 379; *accord, e.g., Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898, 905 (2d Cir. 1993) (finding injury in fact where defendant's "'advertising practices detracted [sic] the attention of [plaintiff's] staff members from their regular tasks'"). While only a "perceptible impairment" of an organization's activities is necessary to establish an injury in fact, *see Nnebe v. Daus*, 644 F.3d 147, 157 (2d Cir. 2011), such a drain or diversion of resources must be responsive to the injurious conduct and not a "random" or "unprompted" expenditure. *See Fair Hous. Justice Ctr., Inc. v. 203 Jay St. Associates, LLC*, No. 21CV1192NGGJRC, 2022 WL 3100557, at *4 (E.D.N.Y. Aug. 4, 2022) (holding initial investigation of housing discrimination insufficient to establish injury in fact where investigation was not responsive to complaint of discrimination).

11

Plaintiff brings its claims under a theory of organizational standing, as it seeks to vindicate its own rights rather than those of an individual member of the Fortune Society. *See* Compl. ¶ 12. However, Plaintiff fails to allege a sufficient injury. Plaintiff claims that Defendant's alleged discriminatory policy has "frustrated Fortune's mission of ensuring that formerly incarcerated people can successfully reenter society and obtain safe and stable housing, forced it to divert resources to address iAfford's discrimination, and diminished its ability to carry out other programs and initiatives." Compl. ¶ 77. Plaintiff's alleged diversion of resources to "identify, investigate, and counteract iAfford's discriminatory conduct[,]" Compl. ¶ 81, was not injurious as Plaintiff's actions were not responsive to the alleged discrimination and did not divert resources from the regular tasks of the organization. *See Fair Hous. Justice Ctr., Inc.* 2022 WL 3100557, at *4.

Plaintiff's identification of the alleged discrimination was, by its very nature, not a response to the discrimination, and thus not a sufficient injury. *See id.* Further, the majority of activities Plaintiff alleges as "investigation" were merely part of the initial discovery of the alleged discrimination, and thus were not an injurious diversion of resources, but a routine expenditure of resources within Plaintiff's regular activities unprompted by the alleged discrimination. *See id.* As stated in the Complaint, Fortune assisted its client in his application to rent an iAfford NY marketed affordable unit and his appeal of the denial of his application in "the course of its regular activities assisting clients to secure housing"—not to investigate the alleged discrimination. Compl. ¶ 34. Thus, the list of activities associated with appealing the denial (interviewing the client, advocating for the client, assisting the client in his appeal, coordinating with housing managers, and researching iAfford NY's policies), *Id.* ¶ 82, do not constitute an injury in fact as

they were part of the initial identification of the alleged discrimination and thus were not responsive. *See Fair Hous. Justice Ctr., Inc.* 2022 WL 3100557, at *4.

The three alleged calls made by a Fortune Society staff member and two FHJC testers also fail to demonstrate a sufficient injury for Article III standing. A single call by a staff member to inquire about a policy and the alleged "time and financial resources" expended by Plaintiff to coordinate the FHJC testers—which the Complaint noticeably does not quantify—is not a diversion of resources amounting to a "perceptible impairment" of Fortune's activities. *C.f. Fortune Society v. Sandcastle Towers Hous. Dev. Fund*, 388 F. Supp. 3d at 164 (finding sufficient injury where plaintiff expended resources assisting 20 clients to find alternative housing, hired new employee to assist in efforts, and paid higher brokers fees and rents for alternative housing). As described in the Complaint, the test calls consisted of inquiring about the policy and did not involve the planning, preparation, and expenditure of resources typically required by housing discrimination testing. *See e.g. Havens*, 455 U.S. at 373 (defining testers as "individuals who, without an intent to rent or purchase a home or apartment, pose as renters or purchasers for the purpose of collecting evidence of unlawful steering practice").

Likewise, Plaintiff's efforts to "counteract" Defendant's alleged discrimination were self-imposed and purely conducted to advance Plaintiff's broader mission, not in response to Defendant's alleged discriminatory conduct. Plaintiff's investment in education and outreach efforts to broadly address housing policies that categorically ban those with justice involvement, including the $11,000 advocacy videos, was not a response to *Defendant's* alleged discrimination, but rather, a response to a broad issue affecting Fortune's clients and its re-entry efforts. Plaintiff admits that these resources were not specific to iAfford NY's alleged policy, but generally about "bans like the one [allegedly] enforced by iAfford." Compl. ¶ 85. Accordingly, these efforts were

not responsive to the alleged discrimination, and thus not injurious. *See Fair Hous. Justice Ctr., Inc.* 2022 WL 3100557, at *4.

In addition, Plaintiff claims an injury due to the fact that the alleged discrimination "disrupted the housing pipeline from temporary to . . . permanent housing" and required Fortune to "continue to provide temporary housing and support to individuals who would otherwise be qualified for these affordable housing opportunities." Compl. ¶ 86. Plaintiff conflates its ability to move clients through its housing pipeline at a faster rate with its clients' fixed need for temporary housing. Plaintiff has a fixed capacity of 300 temporary and permanent housing units. *Id.* ¶ 23. Demand for these units is "always high" and "far exceed[s]" availability. *Id.* Any backlog caused by Defendant's alleged discriminatory conduct would simply reduce the rate clients are moved through the pipeline, not change the fact that Fortune will continue to provide temporary housing units to meet the housing demands of its clients, which exceeds capacity. Thus, the provision of temporary housing by Plaintiff is not an injury caused by Defendant's alleged conduct.

As Plaintiff has failed to allege a sufficient injury in fact, it does not have standing and its Complaint must be dismissed. *See Warth*, 422 U.S. at 498.

## PLAINTIFF FAILS TO STATE A CLAIM UNDER THE FAIR HOUSING ACT

Plaintiff asserts one cause of action under the FHA, citing multiple FHA provisions—42 U.S.C. § 3604(a), (b), and (c). *See* Compl. ¶¶ 93-96. The substance of its claims relates principally to Section 3604(a) (discrimination in the offering of, or in refusal to offer, a dwelling) and Section 3604(b) (discrimination in the "terms, conditions, or privileges" of a sale or rental). A plaintiff may assert claims under those provisions premised either on a theory of disparate treatment or a theory of disparate impact. *See, e.g., Inclusive Cmtys. Project, Inc.*, 576 U.S. at 533-39; *Mhany*

*Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 599-600 (2d Cir. 2016).  Here, Plaintiff fails to adequately plead either.[2]

In passing, Plaintiff also references Section 3604(c) of the FHA, which prohibits discrimination in the making, printing, or publishing of a "notice, statement, or advertisement" with "respect to the sale or rental of a dwelling."  As explained below, Plaintiff also fails to plead an actionable claim under this provision.

## I.      Plaintiff Fails to Plead an Actionable Disparate-Treatment Claim

To establish a prima facie case of disparate treatment, a plaintiff must show that "animus against the protected group was a significant factor in the position taken by the . . . decision-makers themselves or by those [to] whom the decision-makers were knowingly responsive." *Mhany Mgmt., Inc.*, 819 F.3d at 606 (internal quotations omitted).  Although a plaintiff need not particularly allege discriminatory animus to sufficiently plead disparate treatment, *see Boykin*, 521 F.3d at 215, "a complaint is appropriately dismissed where a complaint's factual allegations do not permit the conclusion that the complained-of conduct occurred because of discriminatory animus[,]" *Logan v. Matveevskii*, 175 F. Supp. 3d 209, 226 (S.D.N.Y. 2016).  A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.  While this pleading standard is construed liberally for pro se litigants, the same is not true for represented litigants, such as here. *See Boykin*, 521 F.3d at 214 (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

---

[2] The Complaint is unclear as to whether Plaintiff's claims are premised on disparate impact, disparate treatment, or both.  Plaintiff never references disparate treatment in the Complaint, but alleges explicit discriminatory intent by Defendant, a requirement of a disparate treatment claim.  However, in framing its claim of unlawful discrimination, Plaintiff describes policies that categorically deny housing to people with criminal records, "including the blanket ban maintained and enforced by iAfford," as "facially neutral housing practices[.]" *See* Compl. ¶ 43.  Defendant assumes for purposes of this motion that Plaintiff is asserting both disparate-treatment and disparate-impact claims.

Plaintiff fails to allege facts that indicate plausible intentional discrimination. Plaintiff claims that Defendant's alleged policy has been "carried out with the intent to discriminate on the basis of race, color, and national origin." Compl. ¶¶ 95, 99, 103. Yet, Plaintiff fails to make any factual allegations of Defendant's discriminatory intent beyond the policy's alleged disparate impact on African American and Latinx applicants and Defendant's purported knowledge of HUD and HPD guidance indicating the possibility of such an impact. *Id.* ¶¶ 72-73. Plaintiff does not, and cannot, allege that African American and Latinx applicants with criminal histories are treated differently than white applicants with criminal histories, or that iAfford NY has a policy that on its face treats applicants differently based on race. Plaintiff simply alleges discriminatory impact and fails to allege additional facts demonstrating discriminatory intent, a necessity for the plaintiff to move its claim across the line between "possibility and plausibility of 'entitlement to relief'" under a disparate treatment theory. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (citations omitted). The mere conclusory allegation that Defendant intentionally discriminated is insufficient. *See Harris v. Dep't of Hous. Pres. & Dev.*, No. 08-CV-1886 (ENV), 2011 WL 13299800, at *3 (E.D.N.Y. Apr. 5, 2011) ("[C]onclusory statements that defendants discriminated against the plaintiff on account of a protected status" do not state a claim); *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 73 (2d Cir. 2021) (dismissing FHA claim where plaintiff's allegation of discriminatory intent was purely conclusory).

Even if the facts alleged by Plaintiff could support a disparate treatment theory, they do not give rise to a minimal inference of discriminatory intent. *See Francis*, 992 F.3d at 90. Plaintiff's sole factual allegation of intent is Defendant's alleged knowledge of the discriminatory effect of blanket bans on African American and Latinx applicants. Compl. ¶ 70-73. Such an allegation is "'merely consistent with' a defendant's liability" for disparate treatment, but does not

"plausibly suggest" unlawful conduct as it is more likely explained by lawful behavior—the need to provide safe housing. *See Iqbal*, 556 U.S. at 678, 680.

Lastly, it is important to note that, while a pro se litigant's complaint "must be held to less stringent standards than formal pleadings drafted by lawyers[,]" Plaintiff is represented by excellent counsel, well-versed in civil rights litigation; thus, its Complaint is not entitled to the same leniency. *See Boykin*, 521 F.3d at 214. Without any factual allegations indicating discriminatory intent by Defendant, Plaintiff fails to plausibly allege a claim for relief under a theory of disparate treatment. Accordingly, Plaintiff's disparate-treatment claim must be dismissed. *See Logan*, 175 F. Supp. 3d at 226.

## II.    Plaintiff Fails to Plead an Actionable Disparate-Impact Claim

In 2015, the Supreme Court affirmed that disparate-impact claims were cognizable under the FHA and implicitly adopted 2013 HUD regulations establishing a three-step burden-shifting test to adjudicate such claims.[3] *See Inclusive Cmtys. Project, Inc.*, 576 U.S. at 527. Under this burden-shifting test, first, a plaintiff is required to "make a prima facie showing of disparate impact[,]" then the burden shifts to the defendant to prove "'that the challenged practice is necessary to achieve one or more substantial, legitimate, nondiscriminatory interests[,]'" and, upon such a showing by the defendant, the plaintiff must prove that these interests "'could be served by another practice that has a less discriminatory effect.'" *Id.* (quoting 24 C.F.R. § 100.500(c)(1)

---

[3] In 2020, HUD published a final rule amending 24 C.F.R. § 100.500 to reflect its understanding of the Supreme Court's ruling on disparate impact claims in *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519 (2015). However, the Federal District Court for the District of Massachusetts granted a preliminary injunction staying the implementation of the 2020 rule. *See Mass. Fair Hous. Ctr. v. HUD*, 496 F. Supp. 3d 600 (D. Mass. 2020). As of the date of this memorandum, that stay remains in effect. A joint status report recently filed in *Massachusetts Fair Housing Center* explains that HUD voluntarily dismissed its appeal of the preliminary injunction and published a proposed rule reconsidering the 2020 rule and recodifying its prior 2013 regulations on disparate impact. *See* Joint Status Report, 3:20-cv-11765, D. Mass. Rec. Doc. 60 (Dec. 29, 2022). According to the joint status report, HUD's final rule on disparate impact is under final review by the Office of Information and Regulatory Affairs. *See id.*

(2013)); *accord Mhany Mgmt., Inc.*, 819 F.3d at 617-619 (adopting burden-shifting test under 2013 HUD regulations and recognizing first two steps "substantially the same as [burden-shifting test] in [Second Circuit] case law").  Although the Supreme Court affirmed that disparate-impact claims could be brought under the FHA, it also recognized that adequate safeguards are required to "avoid serious constitutional questions that might arise under the FHA[.]" *Inclusive Cmtys. Project, Inc.*, 576 U.S. at 540.  Accordingly, the Court held that plaintiffs asserting disparate impact must satisfy a "robust causality" requirement, noting that "[a] plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact." *Id.* at 543.

Here, Plaintiff fails to meet its pleading burden because: (1) it fails to allege facts demonstrating the existence of a "disproportionate impact" on a protected group, *see Tsombanidis*, 352 F.3d at 575, and (2) it fails to allege facts demonstrating the existence of a "causal connection between the facially neutral policy and the alleged discriminatory effect," *see id*., under the "robust causality requirement[,]" *see Inclusive Cmtys. Project, Inc.*, 576 U.S. at 542.

### 1.    Plaintiff Fails to Allege a Disproportionate Impact on African American and Latinx Applicants

Plaintiff fails to allege facts demonstrating the existence of a disproportionate impact of the alleged policy on African American and Latinx applicants.  A plaintiff must prove that the challenged conduct "'caused or predictably will cause a discriminatory effect'" *Inclusive Cmtys. Project, Inc.*, 576 U.S. at 527 (citing 24 C.F.R. § 100.500(c)(1) (2013)); *accord Huntington Branch, N.A.A.C.P. v. Town of Huntington*, 844 F.2d 926 (2d Cir. 1988), *aff'd in part sub nom. Town of Huntington, N.Y. v. Huntington Branch, N.A.A.C.P.*, 488 U.S. 15 (1988).  An inference of discriminatory impact is not sufficient. *See Tsombanidis*, 352 F.3d at 575.  Ordinarily, plaintiffs are "required to include statistical evidence to show disparity in outcome between

groups." *Id.* (rejecting claim where plaintiff failed to present statistical information demonstrating challenged fire code actually or predictably created shortage of housing for protected group).

For statistical data to sufficiently demonstrate that the challenged conduct actually or predictably results in discrimination at the pleading stage, it must "reveal disparities between populations that are relevant to the claim the plaintiff seeks to prove." *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 210 (2d Cir. 2020). National statistics are generally insufficient unless the plaintiff demonstrates why the statistics presented "are in fact likely to be representative" of the legally relevant subgroup of the population. *Id.* at 211; *accord Wards Cove Packing Co., Inc. v. Antonio*, 490 U.S. 642, 651 n.6 (1989) (allowing statistics for general population where such statistics "accurately reflect the pool of qualified job applicants"); *Betsey v. Turtle Creek Associates*, 736 F.2d 983, 987-88 (4th Cir. 1984) (holding relevant population was tenants in building to which challenged policy applied and rejecting relevance of generalized population data). Statistics specific to the locality where the challenged conduct occurs and the population impacted by the conduct are sufficient to establish a discriminatory impact. *See Tsombanidis*, 352 F.3d at 575 (holding plaintiffs would have met burden if offered statistics specific to City of West Haven); *L.C. v. LeFrak Org., Inc.*, 987 F. Supp. 2d 391, 402 (S.D.N.Y. 2013) (finding statistical evidence specific to HIV population on housing subsidies in New York City sufficient to plead disparate impact and survive motion to dismiss).

Plaintiff's use of national and New York State criminal justice data is insufficient to demonstrate that Defendant's alleged policy disproportionately impacts African American and Latinx applicants of iAfford NY marketed properties. The Complaint states that "65% of the formerly incarcerated population in the United States is Black or Latino" and "three-quarters (or 75%) of [New York] State's formerly imprisoned population is Black or Latino." Compl. ¶¶ 46-

47.  Yet, Plaintiff fails to demonstrate how its general population data, on the national and state level, is likely to be representative of the legally relevant subgroup—individuals applying to iAfford NY marketed affordable units in New York City through the Housing Connect lottery or the HPS referral system. *See Mandala*, 975 F.3d at 211.  Although Plaintiff attempts to "narrow[ ] the analysis to the qualified applicant pool[,]" it simply breaks down the national and state-wide data by income brackets representing the percentage of the AMI required for eligibility for affordable units under the ANY program. Compl. ¶¶ 49-55.  However, this does not change the fact that Plaintiff fails to present local statistics to New York City and the relevant applicant pool indicating that Defendant's alleged policy has a disparate impact on African American and Latinx applicants.  Without such statistics, Plaintiff fails to plead that Defendant's alleged policy actually or predictably has a discriminatory impact. *See Tsombanidis*, 352 F.3d at 575; *Inclusive Cmtys. Project, Inc.*, 576 U.S. at 543.

### 2. Plaintiff Fails to Allege a Robust Causal Link Between the Challenged Policy and the Alleged Discriminatory Effect

Relatedly, Plaintiff fails to plausibly allege a robust causal link between Defendant's implementation of the policy and the alleged discriminatory effect because it does not establish that Defendant's implementation of the policy "has resulted in or predictably will result in underrepresentation" of African American or Latinx applicants in affordable housing units in New York City. *Tsombanidis*, 352 F.3d at 575-76.

Courts must apply a "robust causality requirement" to disparate-impact claims in order to (1) "ensure[] that [r]acial imbalance . . .  does not, without more, establish a prima facie case of disparate impact," and (2) "protect[] defendants from being held liable for racial disparities they did not create." *Inclusive Cmtys. Project, Inc.*, 576 U.S. at 542 (internal quotation omitted).  As the Supreme Court has explained, "[c]ourts should avoid interpreting disparate-impact liability to

be so expansive as to inject racial considerations into every housing decision," because "serious constitutional questions . . . might arise under the FHA . . . if such liability were imposed based solely on a showing of a statistical disparity." *Id.* at 540, 543 (internal quotation omitted).

As an initial matter, Plaintiff fails to establish a robust causal link between iAfford NY's alleged policy and the alleged discriminatory effect because, as explained above, the statistics cited by Plaintiff fail to demonstrate that there is an actual or predictable discriminatory effect on African American and Latinx applicants. Even assuming a discriminatory impact, Plaintiff's allegations fail to demonstrate that any alleged disparity between racial groups was caused by any policy or practice attributable to Defendant. Plaintiff neither presents specific data on the applicant pool for iAfford NY marketed properties indicating the predictability of a discriminatory result, nor evidence that iAfford NY's implementation of the policy has actually resulted in the exclusion of African American and Latinx individuals from affordable units—Plaintiff's only allegation of actual exclusion is a single client who was denied an affordable unit, and Plaintiff fails to specify his race. Compl. ¶¶ 5, 34-36.

Even if Plaintiff was able to demonstrate that income-eligible African American and Latinx applicants for affordable housing units in New York City would be disproportionately impacted by a blanket ban on applicants with criminal histories, Plaintiff fails to demonstrate that iAfford NY's alleged policy actually or predictably results in such disparate impact. In fact, Plaintiff would be unable to make such showing, as iAfford NY has approved five out of eight of its justice-involved applicants between 2020 and 2022. Affidavit of Eugene Goldstein ¶ 18. And, all approved applicants with criminal histories were African American or Latinx. *Id.*

For all these reasons, Plaintiff's disparate impact claim must be dismissed. *See Inclusive Cmtys.*, 576 U.S. at 543.

**III.**     **Plaintiff Fails to Plead Actionable Claims under FHA Section 3604(c)**

Plaintiff also invokes a claim under FHA Section 3604(c). Compl. ¶ 96.  However, Plaintiff fails to plead essential elements required to state a claim under this provision.  Section 3604(c) makes it unlawful "[t]o make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on" a protected characteristic.  Plaintiff's only allegation that remotely relates to such a claim is the alleged statements made by iAfford NY Project Managers regarding the eligibility of an applicant with a prior conviction during phone calls with Plaintiff's employees and FHJC testers. *See* Compl. ¶¶ 28, 40-41.

Plaintiff fails to state a claim because statements communicating a blanket ban on applicants with criminal histories, without more, do not indicate a preference, limitation, or discrimination based on race.  Although a statement need not be facially discriminatory to violate § 3604(c), it must indicate impermissible racial discrimination. *See Soules v. U.S. Dept. of Hous. Urban Dev.*, 967 F.2d 817, 824-25 (2d Cir. 1992).  To determine whether a statement does so, the court looks at whether "'an ad for housing suggests to an ordinary reader [or listener] that a particular race is preferred or dispreferred for the housing in question.'" *Id.* at 824 (quoting *Ragin v. New York Times Co.*, 923 F.2d 995, 999 (2d Cir. 1991)).  The ordinary reader "is neither the most suspicious nor the most insensitive[.]" *Id.* (internal quotations omitted); *see Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898, 906 (2d Cir. 1993) (affirming district court's decision to give limited weight to plaintiffs' testimony due to their "heightened sensitivity [to advertisements] attributable to an awareness of historical patterns of housing discrimination and personal experiences with segregation").  Although discriminatory intent of the defendant "'may be relevant to a factual determination of the message conveyed,' the message conveyed to the ordinary reader [is] the 'touchstone' of [the court's] inquiry." *Ragin*, 6 F.3d at 906 (internal quotations omitted).

22

Here, an ordinary listener would not have understood the iAfford NY staff members' alleged statements to suggest that African American and Latinx applicants were banned or dispreferred. Rather, an ordinary listener would have understood that all applicants with criminal histories, regardless of race, were dispreferred. *C.f. Short v. Manhattan Apartment, Inc.*, 916 F.Supp.2d 375, 394 (S.D.N.Y. 2012) (holding statement by broker that landlord would not accept tenant with subsidy for persons living with HIV/AIDS did not indicate preference with regard to disability, but preference for source of income). The touchstone of a FHA Section 3604(c) inquiry is the message conveyed. Here, that message did not indicate a preference on the basis of race. As such, Plaintiff's claim under Section 3604(c) must be dismissed. *See Manhattan Apartments, Inc.*, 916 F.Supp.2d at 394.

## PLAINTIFF'S STATE- AND LOCAL-LAW CLAIMS SHOULD BE DISMISSED

### I.     Plaintiff Fails to State a Claim Under State and Local Law

Plaintiff's claims under the NYSHRL and NYCHRL are essentially identical to the allegations of its federal claims, *compare* Compl. ¶¶ 97-104, *with id.* ¶¶ 93-96. As such, they suffer from the same fatal pleading deficiencies and may be dismissed by this Court on the merits, in the interest of judicial efficiency. Claims under the NYSHRL are evaluated under the same framework as the FHA; thus, Plaintiff's NYSHRL claim fails for all of the reasons stated above. *See, e.g., Francis*, 992 F.3d at 80. Similarly, although NYCHRL claims are construed under a somewhat "more lenient" standard, that standard is "not boundless" and "a complaint will not always pass muster" under it. *Nieblas-Love v. N.Y.C. Hous. Auth.*, 165 F. Supp. 3d 51, 74 (S.D.N.Y. 2016); *accord Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 250 (E.D.N.Y. 2015). Where, as here, "'no construction of the NYCHRL, no matter how broad, would compel a different result[,]" a NYCHRL claim should be dismissed for the same reasons compelling dismissal under Title VII and the FHA. *See Suarez v. American Stevedoring, Inc.*, No. 06-CV-6721, 2009 WL

3762686, at *9 (E.D.N.Y. Nov. 10, 2009) (quoting *Wilson v. N.Y.P. Holdings, Inc.*, No. 05 Civ. 10355(LTS)(DFE), 2009 WL 873206, *29 (S.D.N.Y. Mar. 31, 2009) (dismissing disparate treatment claim under NYCHRL for same reasons dismissed under *McDonnell* burden shifting test)); *accord Manhattan Apartments, Inc.*, 916 F.Supp.2d at 396 (dismissing NYCHRL claim for same reasons dismissed under FHA as "even a broad reading of the NYCHRL cannot save Plaintiff's claims"); *see also Fortune Society v. Sandcastle Towers Hous. Dev. Fund*, 388 F. Supp. 3d at 178 (dismissing disparate treatment claim under NYCHRL for same reasons dismissed under FHA).

## II.     Alternatively, this Court May Decline to Exercise Supplemental Jurisdiction

If the Court is not inclined to dismiss the state- and local-law claims for failure to state a claim, it should decline to exercise supplemental jurisdiction over those claims after ordering dismissal of Plaintiff's FHA claims. *See LuxuryBeachfrontGetaway.com, Inc. v. Town of Riverhead, New York*, No. 17-CV-4783(SJF)(SIL), 2018 WL 4635736, at *12 (E.D.N.Y. June 25, 2018), *report and recommendation adopted in part, rejected in par*t, No. 17-CV-4783(SJF)(SIL), 2018 WL 3617947 (E.D.N.Y. July 27, 2018); *see also Sanders v. Grenadier Realty, Inc.*, No. 09-2341-cv, 2009 WL 1270226, at *3 (S.D.N.Y. May 6, 2009) (quoting 28 U.S.C. § 1367 (c)(3)). This is appropriate when "the only federal law claims have been eliminated before trial"—and particularly "when the federal-law claims have dropped out of the lawsuit in its early stages." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 353, 350 (1988); *Francois v. New York City Dept. of Ed.*, No. 19-CV-11119 (ER), 2021 WL 603226, at *6 (S.D.N.Y. Feb. 16, 2021) (citing *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006)).

4872-9118-3934

**CONCLUSION**

For the foregoing reasons, Plaintiff's Complaint should be dismissed, with prejudice.

Dated: New York, New York        NIXON PEABODY LLP
       January 6, 2023

       By: */s/ Travis Hill*_____
            Travis Hill
            Erica F. Buckley

            Tower 46, 55 West 46th Street
            New York, NY 10166-0193
            (212) 351-4000
            thill@nixonpeabody.com
            ebuckley@nixonpeabody.com

            *Attorneys for Defendant iAFFORD NY, LLC*