## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE FORTUNE SOCIETY, INC. | Case No. 22 CV 6584 |
| Plaintiff, | |
| v. | Judge Pamela K. Chen |
| | Magistrate Sanket J. Bulsara |
| iAFFORD NY, LLC, | |
| Defendant. | Jury Trial Demanded |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ................................................................................................................... 1

FACTUAL BACKGROUND ................................................................................................... 2

LEGAL STANDARD............................................................................................................... 6

ARGUMENT ........................................................................................................................... 7

   I.   This Case Cannot Be Dismissed Based on the Goldstein Affidavit, Which Actually Supports Plaintiff's Claims. ................................................................................................... 7

   II.   The Fortune Society Has Stated an Injury for Purposes of Organizational Standing........ 10

   III.   Plaintiff Has Adequately Plead Federal, State, and Local Fair Housing Violations...... 13

     A.   Plaintiff States a Claim for Disparate Impact............................................................ 13

       i.   Plaintiff's Disparate Impact Allegations Easily Surpass the Pleading Threshold...... 13

       ii.   The Complaint Includes Statistics and Facts Plausibly Alleging Disparate Impact on Black and Latino Potential Applicants. .......................................................................... 14

       iii.   Plaintiff Plausibly Alleges Causality, Far Exceeding Pleading Standards. ................ 18

     B.   Plaintiff Plausibly Alleges a Disparate Treatment Claim. ............................................ 20

     C.   Plaintiff States a Section 3604(c) Claim. .................................................................... 21

     D.   Plaintiff States a Claim Under State and City Law. ..................................................... 25

CONCLUSION........................................................................................................................ 25

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Adkins v. Morgan Stanley*,
    No. 12 CV 7667 HB, 2013 WL 3835198 (S.D.N.Y. July 25, 2013) .......................................14

*Alexander v. Edgewood Mgmt. Corp.*,
    No. CV 15-01140 (RCL), 2016 WL 5957673 (D.D.C. July 25, 2016) ..................................15

*Ave. 6E Invs., LLC v. City of Yuma, Ariz.*,
    818 F.3d 493 (9th Cir. 2016) .................................................................................................24

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................................................................6

*Boykin v. KeyCorp*,
    521 F.3d 202 (2d Cir. 2008)..................................................................................................20

*Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*,
    868 F.3d 104 (2d Cir. 2017)..................................................................................................10

*Children's All. v. City of Bellevue*,
    950 F. Supp. 1491 (W.D. Wash. 1997)..................................................................................24

*Conn. Fair Hous. Ctr. v. CoreLogic Rental Prop. Sols., LLC*,
    369 F. Supp. 3d 362 (D. Conn. 2019) .............................................................................15, 21

*Conn. Fair Hous. Ctr. v. CoreLogic Rental Prop. Sols., LLC*,
    478 F. Supp. 3d 259 (D. Conn. 2020)....................................................................................16

*Diamond House of SE Idaho, LLC v. City of Ammon*,
    381 F. Supp. 3d 1262 (D. Idaho 2019) ..............................................................................9, 20

*E.E.O.C. v. Port Auth. of New York & New Jersey*,
    768 F.3d 247 (2d Cir. 2014)..................................................................................................14

*Fair Hous. Just. Ctr., Inc. v. 203 Jay St. Assocs., LLC*,
    No. 21-CV-1192 (NGG) (JRC), 2022 WL 3100557 (E.D.N.Y. Aug. 4, 2022)................11, 12

*Faulkner v. Beer*,
    463 F.3d 130 (2d Cir. 2006)....................................................................................................7

*Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*,
    783 F.3d 395 (2d Cir. 2015).............................................................................................6, 7, 19

*Fonte v. Bd. of Managers of Cont'l Towers Condo.*,
    848 F.2d 24 (2d Cir. 1988)..................................................................................................6, 7

*Fortune Soc'y v. Sandcastle Towers Hous. Dev. Fund Corp.*,
    388 F. Supp. 3d 145 (E.D.N.Y. 2019) ...........................................................................10, 12

*Friedl v. City of New York*,
    210 F.3d 79 (2d Cir. 2000)............................................................................................6

*Greater New Orleans Fair Hous. Action Ctr. v. St. Bernard Par.*,
    641 F. Supp. 2d 563 (E.D. La. 2009) .........................................................................24

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982)..............................................................................................10, 12

*Hayden v. Paterson*,
    594 F.3d 150 (2d Cir. 2010)........................................................................................20

*Henry Avocado Corp. v. Z.J.D. Brother, LLC*,
    No. 17-CV-4559 (ARR), 2017 WL 6501864 (E.D.N.Y. Dec. 19, 2017) ...............................6

*Jackson v. Tryon Park Apartments, Inc.*,
    No. 6:18-CV-06238 EAW, 2019 WL 331635 (W.D.N.Y. Jan. 25, 2019)................14, 15, 25

*Kopec v. Coughlin*,
    922 F.2d 152 (2d Cir. 1991)........................................................................................19

*L.C. v. LeFrak Org., Inc.*,
    987 F. Supp. 2d 391 (S.D.N.Y. 2013).....................................................................20, 25

*Lynn v. Vill. of Pomona*,
    212 F. App'x 38 (2d Cir. 2007) ..................................................................................25

*Mandala v. NTT Data, Inc.*,
    975 F.3d 202 (2d Cir. 2020).................................................................................16, 17

*Meyer v. Bear Rd. Assocs.*,
    124 F. App'x 686 (2d Cir. 2005) ................................................................................23

*MHANY Mgmt., Inc. v. Cnty. of Nassau*,
    819 F.3d 581 (2d Cir. 2016)..................................................................................13, 24

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
    715 F.3d 102 (2d Cir. 2013)........................................................................................25

*Moya v. U.S. Dep't of Homeland Sec.*,
    975 F.3d 120 (2d Cir. 2020)........................................................................................12

*Nat'l Ass'n for Advancement of Colored People v. Merrill*,
    939 F.3d 470 (2d Cir. 2019)........................................................................................13

*Nnebe v. Daus*,
    644 F.3d 147 (2d Cir. 2011)...................................................................................10, 12

*NYTDA, Inc. v. City of N.Y. Through Traffic Control Div. of N.Y.C. Police Dep't*,
    No. 11-CV-1836(NGG)(MDG), 2013 WL 12358241 (E.D.N.Y. Aug. 28,
    2013) ........................................................................................................................10

*Paige v. N.Y.C. Hous. Auth.*,
    No. 17CV7481, 2018 WL 3863451, at *4 (S.D.N.Y. Aug. 14, 2018)....................19

*Ragin v. New York Times Co.*,
    923 F.2d 995 (2d Cir. 1991)...................................................................................22

*Saint-Jean v. Emigrant Mortg. Co.*,
    50 F. Supp. 3d 300, 319 (E.D.N.Y. 2014) .............................................................17

*Sams v. Ga W. Gate, LLC*,
    No. CV415-282, 2017 WL 436281 (S.D. Ga. Jan. 30, 2017)..................................15

*Short v. Manhattan Apartments, Inc.*
    916 F. Supp. 2d 375 (S.D.N.Y. 2012)....................................................................23

*Soules v. U.S. Dep't of Hous. & Urb. Dev.*,
    967 F.2d 817 (2d Cir. 1992)......................................................................22, 23, 24

*Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*,
    843 F.3d 561 (2d Cir. 2016)......................................................................................6

*Tsombanidis v. W. Haven Fire Dep't*,
    352 F.3d 565 (2d Cir. 2003)....................................................................................17

*Turkmen v. Ashcroft*,
    589 F.3d 542 (2d Cir. 2009)......................................................................................6

*Wards Cove Packing Co. v. Atonio*,
    490 U.S. 642 (1989)................................................................................................16

*Winfield v. City of New York*,
    No. 15CV5236-LTS-DCF, 2016 WL 6208564 (S.D.N.Y. Oct 24, 2016) ........................18, 19

**Statutes**

42 U.S.C. § 3604(c) .........................................................................................................21, 24

Admin. Code of N.Y.C. § 8-107(5) ......................................................................................21

New York Exec. Law § 296(5) .............................................................................................21

**Other Authorities**

24 C.F.R. § 100.75(b) ......................................................................................................22

Fed. R. Civ. P. 12(b)(6)......................................................................................................6

U.S. Dep't of Hous. & Urb. Dev., *Guidance on Application of Fair Housing Act
Standards to the use of Criminal Records by Providers of Housing and Real-
Estate-Related Transactions* (Apr. 4, 2016) ..............................................................5

U.S. Dep't of Hous. & Urb. Dev., *Implementation of the Office of General
Counsel's Guidance on Application of Fair Housing Act Standards to the Use
of Criminal Records by Providers of Housing and Real-Estate Transactions*
(June 10, 2022),......................................................................................................16

# INTRODUCTION

Plaintiff The Fortune Society ("Plaintiff" or "Fortune")'s Complaint plainly alleges that Defendant iAfford NY ("Defendant" or "iAfford") maintains a practice of categorically discouraging and/or rejecting potential tenants based on their records of conviction. Plaintiff's detailed allegations describe how, due to pervasive and well-known racial disparities in the criminal legal system, this practice predictably excludes otherwise-qualified Black and Latino individuals at disproportionate rates. Plaintiff's Complaint is well-supported by credible allegations, including three recorded phone calls with iAfford employees, an actual incident of rejection, and extensive data on the foreseeable disproportionate impact of this discriminatory practice. The recorded phone calls present a picture of Defendant's criminal records practices that is diametrically opposed to that offered by iAfford in its Motion to Dismiss ("Motion").

Defendant does not dispute that a practice of categorically rejecting justice-involved individuals violates fair housing laws when it has a discriminatory effect or is motivated by discriminatory intent. Indeed, iAfford concedes that an individualized review is necessary to avoid discrimination. Accordingly, if the Court takes Plaintiff's allegations of a blanket practice as true— as it must at the pleading stage—then Plaintiff has unambiguously stated a claim for relief, and iAfford's Motion fails.

iAfford's Motion is plagued by myriad other flaws that require its denial. First, iAfford wrongly relies on a factual affidavit, which cannot be considered at this stage. Second, iAfford's challenges to Plaintiff's organizational standing are based on a misreading of the allegations and the law. Third, iAfford misstates the pleading standard for claims of disparate impact, disparate treatment, and discriminatory statements under the Fair Housing Act ("FHA"), all of which Plaintiff has adequately alleged based on the applicable legal standards. Finally, for the same

reasons why Plaintiff's FHA claims survive iAfford's Motion, Plaintiff's more permissive State and City law claims similarly survive. iAfford's Motion is wrong on the law and wrong on the facts, and the Court should deny it in its entirety.

## FACTUAL BACKGROUND

Plaintiff The Fortune Society is a not-for-profit organization dedicated to the successful reentry and reintegration of formerly incarcerated individuals in New York. Complaint, Dkt. No. 1, at ¶ 2. One of Fortune's principal tasks is to secure housing for its clients and their families. *Id.* at ¶ 3. iAfford is a marketing agent and monitor approved by New York City's ("City") Department of Housing Preservation and Development ("HPD"), and it is subject to its guidelines and requirements. *Id.* at ¶¶ 4, 10. iAfford manages the selection process for hundreds, if not thousands of City-assisted affordable housing units in more than 100 developments across the City. *Id.*

In April 2021, iAfford denied a rental application from a qualified Fortune client at the pre-screening stage solely because he had a past conviction, without engaging in an individualized assessment of his case. *Id.* at ¶¶ 5, 35. His pre-screening report stated: "Applicant is **rejected** based on criminal convictions revealed in the pre-screening report." *Id.* at ¶ 35. While the client inquired about the process to appeal his denial, iAfford never responded. *Id.* Fortune was compelled to investigate iAfford's conduct, given its implications for Fortune's central mission to find housing for formerly incarcerated individuals. *Id.* at ¶¶ 6, 37. In three recorded calls between August and December 2021, two different iAfford Project Managers and a third Applicant File Analyst confirmed that iAfford categorically discourages and/or rejects applicants with a record of criminal conviction. *Id.* at ¶¶ 6, 38–42.

- In a recorded call in August 2021, an iAfford Project Manager stated that "usually people with criminal backgrounds are rejected, like overall." *Id.* at ¶ 38. They

represented that this applied to all iAfford-marketed properties and was in line with HPD guidelines and criteria. *Id.* The Project Manager further discouraged Fortune clients from applying because "it's a long process and then at the end, they're going to be like, aww, I'm rejected. They know all along . . . that they are criminals . . . ." *Id.*

- In a second recorded call in September 2021, a different iAfford Project Manager stated, "if there is any criminal background on [an applicant's] credit report, then we are forced to reject their application." *Id.* at ¶ 40. They added that the type and age of the conviction did not matter, and that "it's not iAfford's policy but it's HPD's . . . ." *Id.*

- In a third recorded call in December 2021, an iAfford Applicant File Analyst stated, "when they do a credit check if your criminal record shows up on your credit report, then that is going to make you ineligible to proceed." *Id.* at ¶ 41. They confirmed that this rule applied to all convictions (including misdemeanors), and that this was in line with Housing Connect policies. *Id.*

This practice has a predictable disproportionate adverse impact on Black and Latino prospective applicants, including Fortune's clients, given well-known racial disparities in the criminal justice system. *Id.* at ¶¶ 43–57. At the national level, Black and Latino individuals are incarcerated at 5.12 and 2.43 times the rate of white individuals, respectively. *Id.* at ¶ 44. Compared to white men, Black and Latino men are 3.7 and 2.3 times more likely to have at least one felony conviction by age 30. *Id.* at ¶ 45. They are also five and three times more likely than white men to be incarcerated in state prison by age 30. *Id.* These disparities persist among people released from confinement, 65% of whom are Black or Latino. *Id.* at ¶ 46.

Racial disparities at the New York State level mirror or exceed these national disparities. *Id.* at ¶ 47. Black and Latino individuals make up 50% and 25% of the incarcerated population in the State, respectively, despite comprising 17.9% and 19.5% of the State population. *Id.* 75% of the State's formerly imprisoned population is Black or Latino. *Id.* And as recently as in 2015, 46% of the people released from confinement were Black, while 23% were Latino. *Id.* By contrast, both at the national and State levels, white people are incarcerated and released from jails and prisons at rates significantly lower than their share of the population. *Id.* at ¶ 48.

Because Black and Latino individuals are far more likely to have a criminal record, iAfford's blanket ban on justice-involved individuals operates to disqualify otherwise-qualified Black and Latino individuals at disproportionate rates. *Id.* at ¶ 49. These disparities persist when the analysis is narrowed to the qualified applicant pool. *Id.* When looking at the likely composition of New York City residents who have criminal records and annual incomes within the income eligibility requirements for iAfford-marketed units, a conservative analysis shows stark disparities across all relevant income ranges:

- Black and Latino men earning less than $25,000 are 8.1 and 2.5 times more likely than white men to be disqualified from iAfford-marketed units due to a past felony conviction. *Id.* at ¶ 53.

- In the $25,000 to $50,000 income range, Black and Latino men are 4.1 and 2.4 times more likely than white men to be excluded. *Id.* at ¶ 54.

- In the $50,000 to $100,000 income bracket, Black and Latino men are 2 and 2.4 times as likely to be excluded. *Id.* at ¶ 55.

This analysis understates actual disparities because while this is limited to felony convictions, iAfford's stated practice is to exclude applicants with *any* convictions. *Id.* at ¶ 56.

As iAfford employees represented in recorded calls, and as corroborated by the actual rejection of Fortune's client in April 2021 without an opportunity to appeal, iAfford fails to engage in an obviously less discriminatory process—individualized review of justice-involved applicants. *Id.* at ¶¶ 66–68. Individualized review has been a well-known less discriminatory alternative since at least 2016, when the U.S. Department of Housing and Urban Development ("HUD") issued guidance disclaiming blanket prohibitions as discriminatory and pointing to individualized assessment that accounts for mitigating information as a less discriminatory alternative ("HUD Guidance").[1] *Id.* at ¶¶ 58–65. Such individualized assessment is now codified by HPD, which requires that marketing agents like iAfford engage in a substantive, multi-step individualized inquiry that considers the type of convictions, the age of the applicant at the time of the offense, the time elapsed since the date of conviction, and evidence of rehabilitation or good conduct, among other factors. *Id.* at ¶ 65.

iAfford knew or should have known about the discriminatory effects of its practices as an affordable housing provider and HPD monitor in New York City. *Id.* at ¶ 72. The disparate impact of categorical bans is large and foreseeable, *id.* at ¶ 71, and HUD has publicized that exclusionary practices like iAfford's disproportionately burden Black and Latino prospective applicants, *id.* at ¶ 72. iAfford is also an HPD monitor, and as a result it must be "well versed" in HPD policies, which expressly state that excluding applicants based on justice involvement may unlawfully discriminate against Black and Latino people. *Id.* at ¶ 73. Yet, iAfford deliberately chose to implement the more discriminatory method for criminal record screening (categorical rejection), thereby excluding a greater number of Black or Latino prospective tenants. *Id.* at ¶ 75.

---

[1] *See* Compl. at ¶ 62, n.13 (citing U.S. Dep't of Hous. & Urb. Dev., *Guidance on Application of Fair Housing Act Standards to the use of Criminal Records by Providers of Housing and Real Estate-Related Transactions* (Apr. 4, 2016)).

In so doing, iAfford has inflicted direct and substantial harm to Fortune, frustrating its mission to ensure that formerly incarcerated people can reenter society and find safe and stable housing, forcing it to divert limited resources to investigate and counteract iAfford's conduct, and diminishing its ability to carry out other programs and activities. *Id.* at ¶¶ 76–89.

## LEGAL STANDARD

In considering a motion to dismiss, courts must "accept[] all factual allegations as true and draw[] all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). A complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court may consider only the factual allegations contained in the pleadings. *Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir. 2000); *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988). Factual disputes are "inappropriate for resolution on a motion to dismiss." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 405 (2d Cir. 2015); *see also Henry Avocado Corp. v. Z.J.D. Brother, LLC*, No. 17-CV-4559 (ARR), 2017 WL 6501864, at *5 (E.D.N.Y. Dec. 19, 2017) (holding that an argument that "relies on factual disputes [] cannot be resolved on a motion to dismiss").

**ARGUMENT**

iAfford's Motion to Dismiss has three overarching flaws: it wrongly attempts to create factual disputes at the pleading stage; it misapplies the doctrine of organizational standing; and it mischaracterizes the law applicable to Plaintiff's claims. But when considering the allegations in the Complaint under the correct legal framework, Plaintiff has alleged an injury and stated claims for relief. The Court should accordingly deny iAfford's Motion and this case should proceed to discovery.

**I.      This Case Cannot Be Dismissed Based on the Goldstein Affidavit, Which Actually Supports Plaintiff's Claims.**

As an initial matter, factual disputes cannot be resolved at the motion to dismiss stage, where the Court must take Plaintiff's factual allegations as true. *Fin. Guar. Ins. Co.*, 783 F.3d at 405. Here, it is especially improper to wade into the facts at this stage of the case on a motion to dismiss because the Parties agree that blanket discouragement or rejection of justice-involved individuals is unlawful, but disagree on the facts: whether iAfford maintains such a practice.

Defendant seeks to dismiss Plaintiff's claims without the benefit of discovery by introducing its own factual allegations through the Affidavit of Eugene Goldstein. That is wholly inappropriate at the pleading stage, where the Court must "decide the motion [to dismiss] on the complaint alone." *Fonte*, 848 F.2d at 25; *see also Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (It is "error for [a] district court to [] dismiss [] . . . [a] complaint on the basis of [external declarations or affidavits], rather than on the basis of the amended complaint."). The Court must therefore exclude the Goldstein Affidavit and supporting materials. *Id.* Based on Plaintiff's detailed and well-supported allegations, including three recorded calls with iAfford employees, the Court must accept as true that iAfford maintains a practice of discouraging and/or rejecting justice-involved individuals, and assess Plaintiff's claims accordingly. Compl. at ¶¶ 34–42.

But even if the Court were able to consider Defendant's improperly submitted affidavit and supporting exhibit, these materials—rather than supporting iAfford's position—demonstrate iAfford's practices and policies violate HPD requirements, HUD Guidance, and the FHA. The Affidavit includes a written policy that on its face corroborates a categorical ban on justice-involved applicants, as alleged in Plaintiff's Complaint. Specifically, the policy states that persons convicted of a misdemeanor, "a non-violent felony crime," "a violent felony crime," or other categories of offenses within the previous 5–15 years "are rejected" without an individualized review. Goldstein Aff., Ex. A at 7 (*e.g.*, "Persons convicted of a misdemeanor is rejected" – "Past 5 Years."). These categorical rejections based on the type and age of the offense are far from the applicant- and context-specific assessment required by the HUD Guidance, nor do they provide for any appeals process.

This is significant because iAfford does not dispute that a blanket ban violates fair housing laws. To the contrary, the Goldstein Affidavit asserts that iAfford complies with HPD guidelines, which in turn require compliance with HUD Guidance. *Id.* Ex. A at 5 ("Any rejection based on criminal justice information, pursuant to the Marketing Plan, must be consistent with current HUD Guidance."). By touting its purported compliance with the HUD Guidance as a defense, iAfford concedes that the HUD Guidance provides the rubric for FHA violations.[2] Taking Plaintiff's allegations as true—as the Court must treat them at this stage—iAfford has violated the FHA. And

---

[2] As described in the Complaint, this HUD Guidance recognizes that "[b]ecause of widespread racial and ethnic disparities in the U.S. criminal justice system, criminal history-based restrictions on access to housing are likely disproportionately to burden African Americans and Hispanics." Compl. at ¶ 62. Crucially, the Guidance specifically warned that "[a] housing provider that imposes a blanket prohibition on any person with any conviction record—no matter when the conviction occurred, what the underlying conduct entailed, or what the convicted person has done since then—will be unable to meet [their] burden" to show that such a policy is necessary to achieve a substantial, legitimate nondiscriminatory interest. *Id.*

even if the Court were to consider the Goldstein Affidavit (which it should not), if anything, it is an admission that, just like the recorded practices uncovered in Plaintiff's investigation, iAfford's written criminal records policy violates HPD requirements, the HUD Guidance, and fair housing laws.

Moreover, while Defendant makes much of Goldstein's representation that the majority of the population it has placed is Black or Latino, and that it has approved five out of eight "applicants with criminal histories" in the past two years, these statements introduce more questions than answers.[3] Goldstein Aff. at ¶¶ 17–18. For instance, while Defendant asserts that 51% and 9% of placed applicants are Black and Latino, respectively, it is unclear how that relates to the prospective applicants. The Marketing Plan attached to the Affidavit, for example, estimates that 84.3% of applicants would be Black and 10.1% would be Latino. *Id.* Ex. A at 10. Moreover, the Affidavit does not define "criminal histories[,]" nor does it account for prospective applicants who may have been discouraged by iAfford's employees from applying. In any event, the FHA does not require that discriminatory policies are uniformly deployed. *See, e.g.*, *Diamond House of SE Idaho, LLC v. City of Ammon*, 381 F. Supp. 3d 1262, 1275 (D. Idaho 2019) ("That a [challenged action] may not burden all members of the protected class does not remove" the FHA violation.). In all, Defendant's factual allegations and supporting materials both bolster Plaintiff's allegations and highlight the need for additional discovery.

---

[3] Documents produced by iAfford with its initial disclosures reveal that iAfford in fact tried to reject at least two such applicants based on their justice involvement and without an individualized review, before being compelled by HPD to reconsider their applications in accordance with fair housing laws.

## II. The Fortune Society Has Stated an Injury for Purposes of Organizational Standing.

Plaintiff has adequately plead an injury by articulating both a frustration of its mission and a diversion of its resources. iAfford's arguments to the contrary misstate the allegations, the well-settled framework for organizational standing, or both.

The Supreme Court has held that "the sole requirement" for standing under the FHA "is the Art. III minima of injury in fact." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982). An organization shows injury where a "policy has impeded, and will continue to impede, the organization's ability to carry out its responsibilities," *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 110 (2d Cir. 2017) (internal quotation marks omitted), or when its diversion of resources towards identifying and counteracting a defendant's discriminatory conduct constitutes such a perceptible impairment, *see Havens*, 455 U.S. at 379; *Nnebe v. Daus*, 644 F.3d 147, 157 (2d Cir. 2011).[4] There need not be a substantial diversion of resources to amount to an injury in fact; "some perceptible opportunity cost expended by the [organization]" is sufficient. *Nnebe*, 644 F.3d at 157. Notably, a court in this district has already applied this Supreme Court and Second Circuit precedent to find that this Plaintiff, The Fortune Society, has standing to bring similar claims against New York housing providers. *Fortune Soc'y v. Sandcastle Towers Hous. Dev. Fund Corp.*, 388 F. Supp. 3d 145, 163–66 (E.D.N.Y. 2019).

Plaintiff plainly sets forth a cognizable injury in the Complaint. First, Plaintiff alleges a frustration of its mission because iAfford's practice impedes its efforts to place its clients in external housing. Compl. at ¶¶ 76–80. iAfford thus hampers Fortune's ability to carry out a core

---

[4] Plaintiff brings suit under a theory of organizational standing, not one of associational standing, and the Court therefore need not address the latter. *NYTDA, Inc. v. City of N.Y. Through Traffic Control Div. of N.Y.C. Police Dep't*, No. 11-CV-1836(NGG)(MDG), 2013 WL 12358241, at *7 (E.D.N.Y. Aug. 28, 2013).

function—finding stable housing for justice-involved individuals. *Id.* at ¶ 87. Second, the Complaint includes ample allegations that Fortune diverted resources to investigating and counteracting iAfford's conduct as a direct result of learning about its practice, including engaging testers and budgeting funds for advocacy videos that address blanket bans like iAfford's. *Id.* at ¶¶ 81–88. These allegations easily satisfy the liberal injury requirement under the FHA.

iAfford raises five challenges to Plaintiff's standing, all of which are based on a misreading of the allegations or the law, and none of which has merit. *First*, iAfford contends that the diversion alleged was not responsive to discriminatory conduct, Br. at 12, but even a cursory glance at the Complaint belies this assertion. The Complaint expressly alleges that because iAfford's practice is fundamentally incompatible with Plaintiff's mission, it was "forced" to undertake investigative and counteractive measures. *Id.* at ¶¶ 81, 88. These actions were directly responsive to learning about iAfford's practice when a Fortune client was rejected. *Id.* at ¶ 81. *Second*, iAfford argues that activities undertaken in an organization's ordinary course cannot give rise to an injury. Br. at 12–13. Not so—the very case that iAfford cites for this proposition holds that routine activities may be considered for standing: "That testing investigations are included within Plaintiff's normal organizational activities does not deprive it of standing, so long as Defendants' conduct has affected the balance of resources allocated across the organization's activities as a whole." *Fair Hous. Just. Ctr., Inc. v. 203 Jay St. Assocs., LLC*, No. 21-CV-1192 (NGG) (JRC), 2022 WL 3100557, at *3 (E.D.N.Y. Aug. 4, 2022) (quoting *Moya v. U.S. Dep't of Homeland Sec.*, 975 F.3d 120, 130 (2d Cir. 2020)). Responding to iAfford's conduct "prevented Plaintiff from engaging in other activities that are important to its mission." Compl. at ¶ 88.[5] Fortune has thus alleged "some

---

[5] Even if Fortune Society were required to plead that it redirected resources to atypical activities—which it is not—the Complaint here meets this standard because it specifies that

perceptible opportunity cost from the expenditure of resources that could be spent on other activities." *Moya*, 975 F.3d at 130 (internal quotation marks omitted).

*Third*, iAfford takes the position that the volume of resources diverted was inadequate. Br. at 13. But binding precedent has uniformly confirmed that an organization's diversion need only be perceptible to give rise to an injury. *See, e.g.*, *Havens*, 455 U.S. at 379; *Nnebe*, 644 F.3d at 157. The substantial investigation and counteraction alleged here easily surpass this low threshold.

*Fourth*, iAfford attempts to ignore its own role and abdicate responsibility by framing Plaintiff's counteraction as a self-imposed injury. Br. at 13–14. This position again neglects the allegations that Defendant's conduct, specifically, forced them to act. Compl. at ¶ 81. Moreover, courts in this district have expressly rejected this argument in the organizational standing context. *203 Jay St. Assocs., LLC*, 2022 WL 3100557, at *3 (rejecting challenge that investigations alleged "were volitional and routine" and thus not injurious).

*Fifth*, iAfford attempts to diminish the impact on Plaintiff's mission by describing it as a mere reduction in the rate at which Fortune moves clients from temporary housing to long-term external housing. But this is exactly the point—iAfford undermines the efficacy of Fortune's housing work, one of its core functions. Indeed, a court has expressly recognized that impacting Fortune's ability to provide housing is a cognizable harm. *See Sandcastle Towers*, 388 F. Supp. 3d at 164–65. This argument thus concedes that iAfford frustrates Plaintiff's mission and confirms that Plaintiff has been injured.

Under binding precedent, including that cited by iAfford, Plaintiff's Complaint alleges a frustration of mission and diversion of resources adequate to confer standing.

---

Plaintiff used testers and budgeted money for a training video, which are not routine. Compl. at ¶¶ 83–85.

**III.    Plaintiff Has Adequately Plead Federal, State, and Local Fair Housing Violations.**

iAfford's practice of categorically discouraging and/or rejecting justice-involved applicants violates the FHA, the New York State Human Rights Act ("NYSHRA"), and the New York City Human Rights Law ("NYCHRL") because (1) it has a disproportionate adverse impact based on race, color, and national origin, (2) it is motivated in part by race, color, and/or national origin, and (3) it is effected through discriminatory statements. The Complaint plausibly alleges facts supporting each claim.

A.    Plaintiff States a Claim for Disparate Impact.

The Complaint includes detailed, well-supported allegations on the disproportionate adverse impact of iAfford's categorical ban on justice-involved individuals on the basis of race, color, and national origin that meet and exceed the pleading requirements at this stage. To challenge this claim, iAfford quibbles with the granularity of Plaintiff's statistics and conflates *allegations* of causation with *evidence* of causation. Neither argument has merit, and this claim should proceed to discovery.

i.    **Plaintiff's Disparate Impact Allegations Easily Surpass the Pleading Threshold.**

As an initial matter, the Complaint satisfies the pleading standard for disparate impact claims under the FHA. A plaintiff makes a prima facie disparate impact case when they allege "the occurrence of certain outwardly neutral practices" and "a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices." *MHANY Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 587–88, 619 (2d Cir. 2016) (citation and internal quotation marks omitted). Because "a prima facie case . . . is an evidentiary standard, not a pleading requirement[,]" *Nat'l Ass'n for Advancement of Colored People v. Merrill*, 939 F.3d 470, 477 (2d Cir. 2019) (citation and internal quotation marks omitted), "a discrimination

complaint need not allege facts establishing each element of a prima facie case to survive a motion to dismiss[.]" *E.E.O.C. v. Port Auth. of New York & New Jersey*, 768 F.3d 247, 254 (2d Cir. 2014); *see also Adkins v. Morgan Stanley*, No. 12 CV 7667 HB, 2013 WL 3835198, at *8 (S.D.N.Y. July 25, 2013). Rather, Plaintiff must merely "assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *Port Auth. of New York & New Jersey*, 768 F.3d at 254 (citations and internal quotation marks omitted).

Plaintiff plainly meets this standard. First, the Complaint identifies an outwardly neutral practice—Defendant imposes a blanket ban on applicants based on justice involvement, as supported by three recorded calls and an actual instance of rejection. Compl. at ¶¶ 34–42. Second, Plaintiff alleges an actual or predictable discriminatory impact on protected groups caused by that practice—Defendant's practice operates to disqualify otherwise-qualified Black and Latino individuals from its marketed properties at disproportionately high rates, as described in detail in the Complaint. *Id.* at ¶¶ 43–57. Under binding precedent, these allegations exceed the pleading threshold for FHA disparate impact claims.

### ii. The Complaint Includes Statistics and Facts Plausibly Alleging Disparate Impact on Black and Latino Potential Applicants.

Defendant takes issue with Plaintiff's use of national and New York State criminal justice data, arguing that this data is not sufficiently representative of applicants to iAfford-marketed units. Br. at 18–20. But this argument misconstrues Plaintiff's allegations and is premised on a misunderstanding of the applicable standard at the pleading stage.

The statistical allegations in the Complaint (including the statistical analysis described therein) are precisely the type of allegations and analysis that courts have endorsed at the pleading stage in other FHA cases. *Jackson v. Tryon Park Apartments, Inc.*, a factually analogous case in this circuit, is illustrative. No. 6:18-CV-06238 EAW, 2019 WL 331635 (W.D.N.Y. Jan. 25, 2019).

There, the complaint alleged that "empirical evidence shows that nationally, and in New York State, blanket bans on eligibility, based on criminal history, result in the denial of housing opportunities at a disproportionate rate for African Americans and minorities." *Id.* at \*3. The court rejected an argument similar to Defendant's, finding that this allegation plausibly alleged a disparate impact claim under the FHA. *Id.* That is because "the statistical racial disparity that Plaintiff relie[d] on is directly related to Defendants' policy of excluding a person with a felony conviction from renting at Defendants' property[.]" *Id.*

Courts considering similar allegations in factually analogous FHA cases have likewise rejected motions to dismiss based on arguments about the granularity of plaintiffs' statistics. *See, e.g.*, *Conn. Fair Hous. Ctr. v. CoreLogic Rental Prop. Sols., LLC*, 369 F. Supp. 3d 362, 379 (D. Conn. 2019) (rejecting argument that plaintiff's disparate impact claim should have been supported by statistical evidence at the pleading stage, noting that it set the bar too high); *Sams v. Ga W. Gate, LLC*, No. CV415-282, 2017 WL 436281, at \*5 (S.D. Ga. Jan. 30, 2017) (finding that plaintiffs sufficiently alleged that housing provider's criminal history policy disproportionately impacted African Americans where they "provided evidence that African Americans are twice as likely to have criminal convictions as are Caucasians" and "African Americans represented 36% of the prison population in the United States but only 12% of the country's total population"); *Alexander v. Edgewood Mgmt. Corp.*, No. CV 15-01140 (RCL), 2016 WL 5957673, at \*4 (D.D.C. July 25, 2016) (rejecting defendant's argument that statistics for the entire Washington D.C. metropolitan area were improper, noting that "[it] is certainly true there may be better or more precise statistics, but it is also true that there is a limit on what plaintiff can reasonably be expected to provide before discovery"). As Defendant's own authorities recognize, "[n]ational or state general population statistics may be used as the appropriate comparison groups," even beyond the

pleading stage. *Conn. Fair Hous. Ctr. v. CoreLogic Rental Prop. Sols., LLC*, 478 F. Supp. 3d 259, 292 (D. Conn. 2020) (permitting reliance on national and state data at the summary judgment phase); *see also Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 651 n.6 (1989) ("[W]here 'figures for the general population might . . . accurately reflect the pool of qualified job applicants,' . . . we have even permitted plaintiffs to rest their prima facie cases on such statistics as well." (citation omitted)).

Moreover, the HUD Guidance, which iAfford concedes sets the rubric for FHA violations, further undercuts iAfford's argument. The Guidance specifically provides that "[w]hile *state* or local statistics should be presented where available and appropriate based on a housing provider's market area or other facts particular to a given case, *national statistics on racial and ethnic disparities in the criminal justice system may be used* where, for example, state or local statistics are not readily available and there is no reason to believe they would differ markedly from the national statistics." *See* HUD Guidance at 3 (emphasis added). Here, Plaintiff's Complaint does in fact provide state statistics on racial and ethnic disparities, and in any event, iAfford presents "no reason to believe [City statistics] would differ markedly" from state or national statistics. *Id.*[6]

iAfford's reliance on *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 210 (2d Cir. 2020), is misplaced. *Mandala*, an employment discrimination case, does not stand for the proposition that a

---

[6] HUD reiterated this position in a June 2022 Memorandum, noting that "national or statewide statistics on racial and ethnic disparities in the criminal justice system may be sufficient in some instances, such as where there is no reason to believe that the local characteristics would differ from the national statistics; where the actual applicant pool for certain housing might not reflect the potential applicant pool, due to a self-recognized inability on the part of potential applicants to meet the very standards challenged as discriminatory; or where actual applicant data is not available or is too small of a sample size." U.S. Dep't of Hous. & Urb. Dev., *Implementation of the Office of General Counsel's Guidance on Application of Fair Housing Act Standards to the Use of Criminal Records by Providers of Housing and Real-Estate Transactions* (June 10, 2022), at 6.

plaintiff cannot rely on state or national statistics to plead a disparate impact claim. Rather, *Mandala* determined only that the plaintiffs' general population statistics were inappropriate because the plaintiffs did not include any allegations that those numbers accurately reflected the applicant pool for skilled positions requiring special job qualifications at issue. *Id.* at 212. That untethered reliance on general statistics could not be farther from this case—Plaintiff both specifically alleges that racial disparities at the State level "mirror or exceed the national disparities," Compl. at ¶¶ 44–48, and includes an independent analysis of the likely racial and ethnic composition of New York City residents who have criminal records and annual incomes within the income requirements for iAfford-marketed properties, *id.* at ¶¶ 50–55. Thus, unlike *Mandala*, this is the case where it "is reasonable" to find national and state statistics, especially when coupled with Plaintiff's other analyses, "probative" of the discriminatory effect alleged. 975 F.3d at 212.

Even Defendant's recitation of the relevant standard for statistical allegations, which is based on an invocation of *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 575 (2d Cir. 2003), misses the mark. *See* Br. at 18–19 (asserting that Plaintiff "is required to include statistical evidence to show disparity in outcome" in complaint). *Tsombanidis*, which was decided on appeal following a bench trial, discusses the statistical evidence required make a prima facie case, not the pleading standard. *See, e.g.*, *Saint-Jean v. Emigrant Mortg. Co.*, 50 F. Supp. 3d 300, 319 (E.D.N.Y. 2014) (rejecting argument based on *Tsombanidis*, noting that "[w]hile Plaintiffs and Emigrant might define relevant comparison groups and evidence differently, the task for the Court is to determine whether, accepting all allegations in the complaints as true, a viable disparate impact claim exists."). Defendant simply cannot ratchet up the showing necessary by demanding proof or

evidence. Plaintiff's disparate impact allegations are more than sufficient to survive a motion to dismiss.

### iii. Plaintiff Plausibly Alleges Causality, Far Exceeding Pleading Standards.

Plaintiff's Complaint includes detailed facts and statistical allegations supporting a causal connection between iAfford's categorical ban on justice-involved individuals and a disproportionate adverse impact on Black and Latino prospective tenants. Compl. at ¶¶ 49–57. These go far beyond the kinds of allegations necessary to "plead plausibly disparate impact[.]" *Winfield v. City of New York*, No. 15CV5236-LTS-DCF, 2016 WL 6208564, at *6 (S.D.N.Y. Oct 24, 2016). Defendant's argument that Plaintiff shows no statistics or evidence showing iAfford's blanket ban "has resulted in or predictably will result in underrepresentation" of Black or Latino applicants is unavailing. Br. at 20–21. Defendant once again misconstrues both Plaintiff's allegations and the applicable standard at the pleading stage.

First, Defendant overlooks an abundance of allegations relevant to causation. Contrary to Defendant's assertions, Plaintiff's allegations are well supported by a statistical analysis showing the predictably disparate impact of Defendant's practice of rejecting or discouraging justice-involved applicants. These allegations include an independent analysis of the likely racial and ethnic composition of New York City residents who have criminal records and annual incomes within the income requirements for iAfford-marketed properties. *Id.* at ¶¶ 50–52. For three different income ranges, the Complaint describes the dramatically larger rate at which Black and Latino tenants would be adversely affected by iAfford's blanket ban. *Id.* at ¶¶ 53–55. In addition, the Complaint alleges that Defendant's employees actually discouraged and/or excluded Plaintiff's clients, 90% of whom are Black or Latino, by explicitly discouraging Fortune clients from applying in a recorded call with a Fortune employee. *Id.* at ¶¶ 3, 34–38.

Second, Defendant ignores the posture of this case and misstates the applicable standards at this stage by (again) wrongly conflating plausible pleadings with actual evidence. "At the pleading stage, Plaintiffs are merely required to plead plausibly disparate impact; they are not required to prove causation or disparate impact through statistical evidence at the pleading stage." *Winfield*, 2016 WL 6208564, at *6. In fact, in *Paige v. N.Y.C. Hous. Auth.*, a court in this circuit rejected an argument similar to Defendant's, finding that at the pleading stage, a plaintiff need not show that the challenged practice resulted in a shortage of housing. No. 17CV7481, 2018 WL 3863451, at *4 (S.D.N.Y. Aug. 14, 2018). Rather, "[i]t is sufficient that they pled it 'predictably <u>will</u> result in under-representation." *Id.* Moreover, in that case, the court noted that although plaintiffs did not plead they were personally dissuaded by the challenged practice, they alleged "it is entirely predictable that [defendant's] policies . . . have and will disproportionately harm [and discourage from renting] families with young children," and "[t]hat is sufficient at the pleading stage." *Id.* at *5. Here, Plaintiff's allegations certainly surpass that standard.

Third, Defendant suggests that the Court should reject Plaintiff's disparate impact allegations and take Defendant at its word that Plaintiff would be unable to establish causation. But this position is entirely premised on the assertion in the Goldstein Affidavit that iAfford accepted five out of eight justice-involved applicants. Br. at 21 (citing Goldstein Aff. at ¶ 18). As established above, this is at most a factual dispute that the Court cannot resolve at the motion to dismiss stage, *Fin. Guar. Ins. Co.*, 783 F.3d at 405, nor can the Court consider factual allegations outside the pleadings, *Kopec v. Coughlin*, 922 F.2d 152, 155 (2d Cir. 1991). Even if the Court were to consider Defendant's misguided factual assertions that iAfford may not have evenly applied the categorical ban its managers described on recorded calls, that is of no effect—the FHA does not require that a housing provider behave unlawfully all of the time to be liable for

discrimination some of the time. *See Diamond House of SE Idaho, LLC*, 381 F. Supp. 3d at 1275. At best, these assertions would suggest that Defendant may not have discriminated against *all* justice-involved Black or Latino individuals, but that would not shield Defendant from liability for well-pled discriminatory practices against some.

Accordingly, Plaintiff's allegations (1) identifying an outwardly neutral practice, and (2) describing the actual and predictable discriminatory impact on Black and Latino individuals are sufficient to plead a disparate impact claim. Compl. at ¶¶ 34–57.

B. Plaintiff Plausibly Alleges a Disparate Treatment Claim.

The Complaint also adequately alleges disparate treatment. "Because discriminatory intent is rarely susceptible to direct proof, litigants may make 'a sensitive inquiry into such circumstantial and direct evidence of intent as may be available.'" *Hayden v. Paterson*, 594 F.3d 150, 163 (2d Cir. 2010) (quoting *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977)). "Discriminatory intent may be inferred from the totality of the circumstances." *L.C. v. LeFrak Org., Inc.*, 987 F. Supp. 2d 391, 400 (S.D.N.Y. 2013) (quoting *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 48 (2d Cir. 2002)). To survive a motion to dismiss, a plaintiff need only allege facts that "indicate the possibility of discrimination" to present a plausible claim of disparate treatment under the FHA. *Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008).

Here, the constellation of allegations presented in the Complaint are more than sufficient to give rise to an inference of discriminatory intent. The Complaint alleges that racial disparities in the criminal legal system are well publicized, Compl. at ¶ 71, that the resulting implications for housing have been repeatedly broadcasted by HUD, *id.* at ¶ 72, and that HPD expressly incorporates the HUD Guidance on this topic, *id.* at ¶¶ 63–65. iAfford is required to comply with

HUD Guidance, as it concedes, *see supra* Section I, agrees to comply with HPD's policies as a marketing agent/monitor, and advertises itself as "well-versed" in the same. *Id.* at ¶ 73. These facts together make it foreseeable *to iAfford*, specifically, that discouraging or rejecting applicants based on justice involvement would have an adverse impact on Black and Latino applicants, yet iAfford nevertheless deliberately chose to do so. *Id.* at ¶¶ 74–75.

To overcome these allegations, iAfford wrongly asserts that Plaintiff's intent claim flows only from the size of the racial disparities in the criminal legal system and thus is conclusory. Br. at 16. But the Complaint explicitly alleges why iAfford specifically has notice of both the discriminatory nature of blanket criminal records bans and the availability of less discriminatory alternatives, and is obligated to follow HPD requirements and HUD Guidance as part of its contract to operate its portal on behalf of the City of New York. *Id.* at ¶¶ 73–75. When Plaintiff's allegations are taken as true, as is required at this phase, the Complaint states a claim for intentional discrimination. *See Conn. Fair Hous. Ctr.*, 369 F. Supp. 3d at 377 (denying motion to dismiss where intent claim alleged "that Defendant was aware of HUD regulations that govern the use of criminal records in tenant screening decisions, the racial and ethnic disparities in the criminal justice system, the effects that the automatic denial of housing based on criminal records have on minorities and less discriminatory alternatives to its current practices").

C.  Plaintiff States a Section 3604(c) Claim.

Plaintiff alleges that statements attributable to Defendant "indicate a preference, limitation, or discrimination based on" race, color, and national origin. 42 U.S.C. § 3604(c); *see also* New York Exec. Law § 296(5) and Admin. Code of N.Y.C. § 8-107(5). Specifically, Plaintiff alleges that the recorded statements confirming that justice-involved applicants will be rejected, from three different iAfford employees, indicate a preference against Black and Latino residents at iAfford-

marketed units. Given that this claim entails a context-specific analysis and can turn on the intent of the speaker, these allegations are sufficient to permit this claim to proceed to discovery.

A statement violates Section 3604(c) and its analogs where it "suggests to an ordinary reader that a particular race [or protected group] is preferred or dispreferred for the housing in question." *Ragin v. New York Times Co.*, 923 F.2d 995, 999 (2d Cir. 1991). This includes "written or oral notices or statements." 24 C.F.R. § 100.75(b). The prohibited statements are not limited to "the most provocative and offensive" language. *Ragin*, 923 F.2d at 999; *Soules v. U.S. Dep't of Hous. & Urb. Dev.*, 967 F.2d 817, 824 (2d Cir. 1992). Rather, in this context, an unlawful "preference" would describe "any [statement] that would discourage an ordinary reader of a particular race…." *Ragin*, 923 F.2d at 999. And as iAfford acknowledges, this includes facially neutral statements. *Soules*, 967 F.2d at 824. Although liability under Section 3604(c) does not require intent, showing intent is sufficient to impute liability for an otherwise neutral statement. *Id.*

Plaintiff plausibly alleges that statements by iAfford employees indicate an impermissible preference against Black and Latino prospective tenants. These include recorded statements discouraging Fortune clients from applying, claiming that they would be rejected and "[t]hey know all along . . . that they are criminals," Compl. at ¶ 38, as well as recorded statements that "any criminal background" or "criminal record" in applicants' credit reports would invariably lead to a rejection, *id.* at ¶¶ 40–41. Defendant fails to meet its burden to show that these statements, taken to be true, could not suggest to an ordinary listener that Black and Latino applicants are dispreferred, or would be discouraged to apply.

Defendant's main argument is that statements communicating a blanket ban on justice-involved individuals do not indicate a dispreference based on race. Br. at 22–23. That is clearly

not the case. As an initial matter, binding precedent makes clear that it is premature to dismiss a Section 3604(c) claim before Plaintiff has had the benefit of discovery into the surrounding context. The Second Circuit has found that just because statements are facially neutral "does not mean that they do not indicate an impermissible preference in the context in which they were made." *Soules*, 967 F.2d at 824. As such, the Court has recognized that facially neutral statements are particularly difficult to assess at the pleading stage and are thus often unsuitable for resolution on a motion to dismiss. *Id.*; *see also Meyer v. Bear Rd. Assocs.*, 124 F. App'x 686, 689 (2d Cir. 2005) (summary order). That is because in assessing whether these statements indicate an impermissible preference to an ordinary listener, courts highlight "the importance of inflection, intent, and other circumstances in communicating meaning." *Meyer*, 124 F. App'x at 689; *Soules*, 967 F.2d at 825. Indeed, "[t]he written content of questions and statements does not demonstrate the inflection of the speaker, and out of necessity courts must turn to other evidence in determining whether a violation of the FHA occurred." *Soules*, 967 F.2d at 825. This "other evidence" is unavailable to the Court in the pleading posture. Without the benefit of discovery, Defendant cannot make the necessary showing for dismissal of this claim.[7] *See, e.g.*, *Meyer*, 124 F. App'x at 689 ("Given these difficulties [presented by spoken, facially neutral statements], we cannot say at the pleading stage that an ordinary listener could never infer [an impermissible preference].");
*Soules*, 967 F.2d at 825 (finding that dismissal of 3604(c) claim at the motion to dismiss posture

---

[7] Defendant's reliance on *Short v. Manhattan Apartments, Inc.* is similarly unpersuasive. 916 F. Supp. 2d 375 (S.D.N.Y. 2012). In that summary judgment decision, with the benefit of a full factual record, the court found that defendant's statements about "working people" or persons receiving a "program" or "HASA," a government assistance programs for persons living with AIDS, did not indicate an impermissible preference against disabled persons. *Id.* at 394. But as noted above, an ordinary listener may construe references to "criminals" and "criminal records" to discourage or disprefer applicants on the basis of race, and at the pleading stage, the Court does not have the necessary context to determine otherwise.

would be unreasonable given "the significant evidence from which the trier of fact could determine whether the [statements] indicated an impermissible preference").

Moreover, Defendant's sole argument regarding this claim—that the challenged statements concern criminal history and not race—does not overcome the need for discovery. Courts recognize that "language appearing neutral at first blush can nonetheless" have discriminatory meanings and be "facially invalid." *Children's All. v. City of Bellevue*, 950 F. Supp. 1491, 1496 (W.D. Wash. 1997). In fact, in the housing context, courts recognize that defendants often use "code words" that are not "overtly race-based" but may still carry "racial motivations and implications." *See, e.g.*, *Mhany Mgmt., Inc.*, 819 F.3d at 608–09. Plaintiff's allegations are adequate to entitle it to discovery on whether iAfford's references to "criminals" are such code words for race, color, or national origin, and may be understood to have a discriminatory meaning. *See, e.g.*, *Greater New Orleans Fair Hous. Action Ctr. v. St. Bernard Par.*, 641 F. Supp. 2d 563, 571 (E.D. La. 2009) (finding references to "crime" are "nothing more than 'camouflaged racial expressions'") (listing cases); *Ave. 6E Invs., LLC v. City of Yuma, Ariz.*, 818 F.3d 493, 506 (9th Cir. 2016) (discussing the use of "code words consisting of stereotypes of Hispanics[,]" including references to a "high crime neighborhood").

In any event, "[c]ourts also have allowed parties to establish violations of section 3604(c) by proving an actual intent to discriminate"—that is to say, "an intention to make [a] preference, limitation, or discrimination" based on race, color, or national origin. *Soules*, 967 F.2d at 824; 42 U.S.C. § 3604(c). As explained in Section III.B, Plaintiff's Complaint sufficiently alleges Defendant's discriminatory intent in maintaining (and describing in recorded calls) a practice of categorically excluding justice-involved individuals, who are disproportionately Black or Latino. Accordingly, Plaintiff states a Section 3604(c) claim.

D. Plaintiff States a Claim Under State and City Law.

Finally, Plaintiff has adequately plead state and local law claims. Plaintiff's Complaint alleges that iAfford's conduct violates the NYSHRA and the NYCHRL in the same ways it violates the FHA. The standards relevant to Plaintiff's claims of discrimination under these statutes "parallel those applicable under the FHA." *Lynn v. Vill. of Pomona*, 212 F. App'x 38, 40 n.2 (2d Cir. 2007); *see also Jackson*, 2019 WL 331635, at *5.

iAfford does not offer any new substantive arguments with respect to Plaintiff's NYSHRA and NYCHRL claims. Rather, Defendant suggests that these claims suffer from the same pleading deficiencies as Plaintiff's FHA claims and that, even if they are sufficiently stated, the Court should nevertheless decline to exercise supplemental jurisdiction. Br. at 23–24. But this position is premised on the incorrect assumption that Plaintiff's FHA claims will be dismissed. For the reasons stated above, Plaintiff states claims for disparate impact, disparate treatment, and discriminatory statements under the FHA, and thus have likewise stated claims under state and local law. Even if the Court were to dismiss any of Plaintiff's claims under the FHA, which it should not, the state and local laws receive broader construction, and thus these claims should proceed. *L.C.*, 987 F. Supp. 2d at 404 (listing cases for the proposition that the NYSHRA is construed "broadly in favor of discrimination plaintiffs"); *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (for purposes of NYCHRL, federal law is a "floor below which the City's Human Rights law cannot fall" and the City law must "be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof").

## CONCLUSION

For the reasons set forth herein, the Court should deny iAfford's Motion in its entirety.

DATED: February 17, 2023

/s/ Valerie D. Comenencia Ortiz
John Relman*
Lila Miller*
Valerie D. Comenencia Ortiz*
Edward K. Olds (Bar # 5685946)
RELMAN COLFAX PLLC
1225 19th Street, N.W., Suite 600
Washington, D.C. 20036
Tel: (202) 728-1888
Fax: (202) 728-0848
jrelman@relmanlaw.com
lmiller@relmanlaw.com
vcomenenciaortiz@relmanlaw.com
tolds@relmanlaw.com

*Counsel for Plaintiff*

*admitted *pro hac vice*

26

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of February, 2023, a copy of the foregoing Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss Plaintiff's Complaint was sent by electronic mail to all counsel of record. Pursuant to Rule 3(D) of Judge Pamela K. Chen's Individual Practices and Rules, on the day the motion is fully briefed, Plaintiff shall electronically file this document with the CM/ECF system for the Eastern District of New York.

/s/ Valerie D. Comenencia Ortiz
Valerie D. Comenencia Ortiz
*Attorney for Plaintiff*